GEORGE F. WOMBACHER, EXr. *et al.*

*v.*

KATHERINE BARTHELME *et al.*

*Opinion filed February 21, 1902.*

1. WILLS—*fact that will corresponds to testator's declarations is a favorable circumstance.* That the provisions of a will correspond with the proved declarations of the testator as to his intentions is a circumstance tending to contradict the theory of fraud or substitution.

2. SAME—*what does not tend to establish testator's ignorance of contents of will.* Testimony that the testator could not read English writing nor write except to sign his name, has no tendency to establish either his inability to make a will or his ignorance of the contents of the will which he executed.

3. SAME—*effect if appointment of executor is invalid.* Where the appointment of the executor is separate from all the other provisions of the will, the holding of such appointment to be invalid because of substitution of names would not affect the will as an entirety or destroy it as a will.

APPEAL from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

DILL & WILDERMAN, LOUIS KLINGEL, and PETER W. LILL, for appellants.

TURNER & HOLDER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 20, 1900, Michael Friederich made his will and a codicil thereto, each duly signed and attested, and on October 25, 1900, added a codicil, which was also duly signed and attested as required by law. He died November 6, 1900. The will was admitted to probate December 19, 1900, by the probate court of St. Clair county, and letters testamentary were granted to the appellant George F. Wombacher, the executor named in the will. The ap-

pellees, a daughter and a grand-daughter of the testator, filed the bill in this case in the circuit court of said county to contest the will, on the ground that it was executed by the testator without knowing its contents. Answers were filed by adult defendants, putting in issue the fact of testator's knowledge of the provisions of his will, and an infant defendant answered by his guardian *ad litem.* Replications having been filed to the answers, the following issue was made and submitted to a jury: "Did Michael Friederich, at or before the time of his signing the instrument in controversy, read the said instrument, or was said instrument read or explained to him, and did he know the contents thereof?" The jury were instructed that if they found that the testator did not know the contents of the will by reading the instrument or having it read to him or having it explained to him, they should find that it was not his last will and testament. The jury returned a verdict that the instrument was not the last will and testament of Michael Friederich, deceased, and the court, having overruled a motion for a new trial, entered a decree setting aside the will.

The only ground upon which the bill was contested is set forth as follows: "The complainants further represent that the said Michael Friederich could not read and write the English language, and could not write anything of any language beyond the mere writing of his name, and they expressly charge that the said Friederich never read the said instrument and could not read the same, and that the said instrument was never read and explained to him and that he did not know the contents thereof; that he was deceived and imposed upon in the supposed execution of the said instrument; that said instrument is not the last will and testament of the said Michael Friederich, deceased." Appellees, who were successful on the trial of the issue, say that their whole claim is stated in that averment, and that the entire controversy was reduced to the following issue of facts, viz.:

"(a) Did Michael Friederich read the said instrument? (b) Was said instrument read or explained to him? (c) Were its contents and provisions known to him?"

The following facts attending the execution of the will and codicil were proved and were not contradicted in any way: The testator was a German, sixty-one years old, who had lived in St. Clair county, in this State, forty years or more. He had been engaged in business, and was so engaged when the will was made. The attesting witnesses were sent for on October 20, 1900. The will had been prepared and a codicil had been added to it, providing that if any of testator's children contested the will they should thereby forfeit any participation in its benefits, and the sum forfeited should be divided equally among the others mentioned in the will. The testator was in bed, and told the witnesses that he had asked them to come up and sign his will as witnesses. Appellant Wombacher, who is an attorney and who prepared the will and is named as executor, was also present. The will proper, and the codicil, were each signed and attested. The testator then said that he could not go down with the witnesses but would like to treat them because they had done him a favor, and he sent for his wife to bring up something to drink. He took a glass of soda water and the witnesses took beer, after which the witnesses and attorney left. When the codicil of October 25 was signed and attested the same witnesses were requested to attend, and the testator told them they were not quite done yet. The testator then asked the attorney whether he had made the corrections and changes as the testator wanted them, and he answered that he had made them or that the testator could look them over. The testator took the will, and while he was looking it over, one of the witnesses asked if they were in the way, and said if they were they would go away. The testator said he wished they would retire from the room a short time until he had talked the matter over with the at-

torney. They were called back after a while, and the testator said, "Now I am done, and who don't like it that way can put a stick to it," or words to that effect. The codicil was then signed and attested, and the attorney asked the testator what he should do with the will, and was told he should take it away and put it in his safe.

The only evidence offered by the complainants to show that the testator did not know the contents of his will was the testimony of two witnesses that they thought he could not read English writing, and evidence of declarations of the testator that another person than the one named in the will was appointed executor. One of the witnesses founded his belief that the testator could not read English writing on the fact that in 1880 he could not read the orders he gave the witness for machinery and the witness read them to him. The belief of the other witness was based on the fact that in March, 1900, the testator asked him to look over his papers and pick out those belonging to his deceased son, against whom he had a mortgage which he wanted to foreclose, and the witness said the testator could not distinguish the papers one from another. It was proved that the testator, three days before his death, said to John Facht: "John, I have to die, and I want to tell you Mr. Wombacher put your name in the will as administrator. Now everything is all right." He also told Facht, in another conversation, that he was appointed administrator. Four witnesses, who had been well acquainted with the testator, testified that they had seen him many times reading English newspapers, and one of them had discussed with him articles which he had been reading. One witness testified that he had seen the testator pick out notes from a package and select the one he wanted and had seen him write his name, and another testified that when he loaned the testator money he borrowed the witness' spectacles, and after looking over the note objected to the rate of interest, and witness also said that he would look over

notes and read them before he would sign them.   There
was also evidence that he knew how his property was
disposed of by the will and that its provisions were in
accordance with his intention.   He stated to witnesses
some of the provisions of the will after it was made, and
gave his reasons for making them, as well as a more lib-
eral provision for his little boy.   The largest provision
was made for this youngest child, who was the child of
his second wife, and he gave as a reason for the provi-
sion, that if the mother should die the little boy would
have no sister or mother who would bring him up, be-
cause he feared that the other children would not care
for him on account of his being the child of the second
wife.   He also gave reasons for making the unequal divi-
sion among the other children on account of their want
of respect for him as a father, and said he could not give
anything to the child of a deceased son because the son
had cost him a great deal of money.   He talked about
the selection of an executor, and preferred one Philip
Postel, if he would accept.   Postel refused to act, and
the testator spoke of John Facht, with the suggestion
that the Postels would furnish bond for him.   He also
asked a witness whether he thought Mr. Wombacher,
whose name appears in the will, could give a $40,000
bond, and the witness said he thought he could, but that
he need not worry, for the county judge would not let
anybody qualify without giving a good bond.

Errors are assigned on the admission of evidence, in
behalf of complainants, of declarations of the testator
as to who was named executor of the will, and also on
instructions given to the jury.   But we do not regard it
necessary to consider such alleged errors, for the reason
that we think the court erred in not giving a peremptory
instruction, requested by the defendants at the close of
all the evidence, directing the jury to find the paper pro-
duced to be the last will and testament of Michael Fried-
erich.   It is not disputed that Michael Friederich was an

intelligent man, accustomed to business, in full possession of his mental faculties, capable of making such disposition of his property as he saw fit, and that he was entirely free from any improper influence in making it. He had declared his purpose of making his will substantially as it was made, and his statements and reasons show that it was framed in accordance with his intention and purpose, so far as it disposed of his property. The fact that its provisions corresponded with his declarations as to his intentions is a circumstance going to contradict the theory of fraud or substitution. (*Harp* v. *Parr*, 168 Ill. 459.) There was no evidence produced which fairly tended to prove that he did not know the contents of the will, assuming all the evidence to be competent. Under the undisputed testimony in the case, evidence tending to prove that he could not read English writing, and could not write it except to sign his name, would have no tendency to establish either his inability to make a will or his ignorance of the contents of the will which he executed. Evidence of declarations tending to show that he thought Facht was the executor named in the will would not tend to show that the disposition of his property, or any other provision of the will, was unknown to him, and it would only go to the validity of the appointment of the executor. There is no connection between the disposition of the property by the will and the appointment of the executor, which was unnecessary to the validity of the will. If the name of the executor was surreptitiously inserted or was different from what the testator supposed, that part might be rejected as void, but the remainder, which was unquestionably the free act of the testator, ought to be sustained. The appointment of the executor is separate from all other provisions of the will, and, if invalid, could not affect the will as an entirety or destroy it as a will. There was no evidence fairly tending to prove the averment of the bill that the will is invalid on account of the ignorance of

the testator of its provisions, and the instruction should have been given.

The decree of the circuit court is reversed and the cause remanded.     *Reversed and remanded.*