## HYATT *v.* WROTEN.

Opinion delivered November 30, 1931.

*Utley & Hammock* and *A. F. Barham*, for appellant.

*James G. Costen* and *J. T. Costen*, for appellee.

McHANEY, J.   The subject of this controversy is the will of John L. Wroten executed by him and properly attested on the first day of September, 1928. He died in November, 1929, at the age of 75. In this will he bequeathed $5 each to the appellees, three of whom are his children and one a grandchild. Of the remainder of his estate he devised and bequeathed one-fourth thereof to the board of trustees of the Arkansas Masonic Home and School and by the fourth paragraph thereof he gave the entire remainder of his estate "to my faithful housekeeper, Mrs. Lula Garner." He appointed W. W. Prewitt as the executor of his will, and directed that the executor sell all his real and personal property in the manner provided by law, and, after the payment of his debts, he should make the distribution of the estate in the manner above set out. The chief beneficiary, Lula Garner, died intestate in December, 1929, leaving surviving her the contestees, J. R. Hyatt and M. M. Hyatt, her brothers and only heirs at law. The will was duly probated, and thereafter the appellees appealed from the order of probate to the circuit court. Said Prewitt qualified as executor of the will of John L. Wroten, and A. S. Rogers as administrator of the estate of Lula Garner, deceased, and they, together with J. R. and M. M. Hyatt, constitute the contestees and appellants in this case. The contest in the circuit court was based upon two allegations of incapacity of the said John L. Wroten to make a will, first, that he was mentally incapable, and second that its execution was procured by the undue influence of Lula Garner on the testator. On the trial of

the case the court instructed the jury as to the form of the verdict as follows: "Gentlemen, the forms of verdict in this case, the first one reads, 'We, the jury, find for the will.' If you find the will was valid, you will sign that form of verdict. That is, if Wroten had mental capacity to make a will, and it was not obtained or procured by undue influence, you will sign the first form of verdict which reads, 'We the jury find for the will.' If you find that the will was obtained by undue influence or that Wroten didn't have the mental capacity to make it, then you will sign the next form of verdict which reads, 'We the jury find against the will.' That means the will is invalid, of no force. If you sign that form of verdict finding against the will, then I have got other interrogatories for you to answer, 'If you find against the will answer the following interrogatory: Was the execution procured by the undue influence of Lula Garner?' Answer, yes or no. That is, if you find against the will. If you find that the execution of the will was procured by the undue influence of Lula Garner answer this interrogatory: 'Was the whole will procured by her undue influence or was just that part of the will that was made in her favor procured by such undue influence?' If you sign the first verdict, there is no occasion to answer the interrogatories, but, if you find against the will, then there is occasion to answer the interrogatories. If you find that the whole will was not caused by her undue influence, but find that part of it here was caused by her undue influence you will set out that part you find was due to her undue influence, if any."

The jury, under the above instruction returned the following verdict: "We, the jury, find against the will. Hiram Cox, Foreman." In addition the jury answered the interrogatories submitted by the court as follows: "Was the execution procured by the undue influence of Lula Garner? Answer, yes."

"Was the whole will procured by her undue influence or was just that part of the will that was made in her

favor procured by such undue influence? Answer: Just that part of the will that was made in her favor."

Thereupon the court found from the verdict that it was the intention of the jury to sustain the will as to the bequest in favor of the Masonic Home and School, and against the will as to the bequest in favor of Lula Garner and instructed judgment accordingly. From this judgment both sides have appealed.

It is first strenuously insisted by counsel for appellants that there was no substantial evidence introduced upon the trial of the case to show either mental incapacity on the part of the testator or undue influence on the part of Lula Garner, and that therefore there was no substantial evidence to support the verdict upon which the judgment is based. We cannot agree with counsel in this contention. It appears, however, from the verdict that the jury did not find against the will because of the mental incapacity of the testator, but solely on the ground of the undue influence of Mrs. Garner. There were a great many witnesses who testified in this case *pro* and *con* on both questions, and, while the testimony of the undue influence of Mrs. Garner is meager, yet we are of the opinion that the evidence was sufficient to take the case to the jury on both questions, that of mental capacity and undue influence. Both questions were submitted to the jury on instructions that are not questioned, and the verdict of the jury must be sustained if there is any substantial testimony to support the finding of undue influence on the part of Mrs. Garner. In determining this question, we must view the evidence in the light most favorable in support of the verdict. The facts are, briefly stated, that the testator was 75 years old at the time of his death and Lula Garner was 40 or 50. She had been living with him as his housekeeper about five years at the time of his death, and it appears that she exercised a great influence over him—"was always willing to do anything she wanted him to do," as one witness put it. She went with him almost everywhere in his car, and, when she did not go with him, she would walk

out to the car and see him off. The evidence further discloses that there were three bedrooms in the house where they lived alone, one on one side of the hall and two on the other; that she occupied a bed in the room adjoining the testator's bedroom with a door opening from one to the other. She was seen to "wash his neck and ears and put his shoes on him," and he was seen with her in the house with nothing on but his shirt and underwear with her adjusting his neck tie. The testator was a married man, his wife being confined in the State Hospital for Nervous Diseases for many years prior to her death which happened prior to that of the testator. While no witness testified directly that the testator and Lula Garner were guilty of illicit relations, the facts and circumstances testified to were such as to justify the jury in inferring such relationship. We think the fact that they thus lived together for four or five years in the same house alone and with adjoining rooms with a door between, as said by this court in *Alford* v. *Johnson*, 103 Ark. 236, 146 S. W. 516, "was amply sufficient to justify the jury in finding that their relations were meretricious and adulterous." And, as was said in the same case: "There can be no doubt that a long continued relation of adulterous intercourse is a source of great mutual influence of each of the parties over the mind and person and property of the other. * * * When, therefore, undue influence is charged, the fact that the person accused of exercising it lived in illicit relations with the testator is properly admitted in evidence, to be considered by the jury, and from such testimony the jury may draw an inference of fact of such undue influence. And, when in addition to this there is any direct testimony adduced in evidence showing that such influence has been actually exercised, then it will be sufficient to justify the finding that the execution of the will was not a free and unrestrained act of the testator, and therefore that it was executed through undue influence sufficient to invalidate it. While it is true that a presumption of undue influence will not arise as a matter of law from the mere fact that the will is favorable

to one occupying illegal relations to the testator, yet it is an important fact to go to the jury as a circumstance to be considered by them along with other testimony in the case tending to prove the exercise of undue influence. There is a distinction between influence exerted through a lawful relation and that exercised by one occupying an unlawful and adulterous relation. Much less evidence will be required to establish undue influence on the part of one holding wrongful and meretricious relations with the testator.'' See cases cited.

The proof further shows that the testator was ever ready to do whatever she wanted done and to do things about the farm in the way she directed it to be done. Also that he was suffering from hardening of the arteries and high blood pressure which the physicians said tended to lower his mentality and break down his will power. Being subject to her influence in matters of minor importance when coupled with that wicked influence which arises from an illicit relation, we are forced to the conclusion, or at least the jury was justified in so finding, that he disinherited his own children and gave his property to his paramour, or a major portion of it, as a result of a baneful influence operating with great force on a diseased body and a waning will power. We think that if such relation existed between the testator and Lula Garner, as the jury has evidently found, when taken in connection with the bequest to her, this of itself is sufficient evidence of an undue influence exerted by her over the testator as to justify the verdict against the will. As said by the Supreme Court of Florida in *Newman* v. *Smith*, 77 Fla. 633, 82 Sou. 251: ''We do not mean to say that a will should be disturbed merely because it is unreasonable and unjust, but where, as in the instant case, it does violence to the natural instincts of the heart, to the dictates of fatherly affection, to natural justice, to solemn promises, to moral duty, such unexplained inequality and unreasonableness is entitled to great influence in considering the question of testamentary capacity and undue influence.''

Undue influence is generally difficult of direct proof. It is generally exercised in secret, not openly, and, like a snake crawling upon a rock, it leaves no track behind it, but its sinister and insidious effect must be determined from facts and circumstances surrounding the testator, his physical and mental condition as shown by the evidence, and the opportunity of the beneficiary of the influenced bequest to mold the mind of the testator to suit his or her purposes. We cannot therefore say that there was not substantial evidence to support the jury's verdict.

It is next urged that the verdict resulted from the admission of the incompetent testimony of two physicians who had treated the testator in the past as to what diseases he had and as to his mental condition. It is contended that such testimony was admitted in violation of § 4149, Crawford & Moses' Digest. This statute provides that physicians and nurses shall not be compelled to disclose information which they have acquired from a patient while attending him in a professional capacity. The physicians were not claiming the privilege and the heirs of the testator, the appellees, specifically waived the privilege by putting the physicians on the stand, and we think the court unduly limited their testimony under the rule announced in the recent case of *Schirmer* v. *Baldwin*, 182 Ark. 581, 32 S. W. (2d) 162, where we held that the heirs may waive the privilege extended to physicians and nurses. The remarks of counsel about which complaint was also made were made in connection with the testimony of the physicians, and, since we hold that the testimony was competent and that the court unduly limited it, the remarks of counsel become unimportant.

The only other question that has given us any concern is the question as to whether the verdict of the jury, both general and special, that is, the general verdict against the will, and the answers to the two interrogatories, constitutes a conclusive finding against the will as a whole, or whether it is a finding that the will is valid as to the Masonic Home and School and invalid as to

Lula Garner. It will be remembered that the court told the jury that, if they found against the will, "that means the will is invalid, of no force." Appellees have appealed on the ground that the effect of the verdict both general and special is that the whole will is invalid. The answer to the second interrogatory propounded by the court, however, contradicts that idea, and is a special finding of the jury that "just that part of the will that was made in her favor" was procured by undue influence, and that constituted a special finding of the jury to that effect. Under our Code of Civil Procedure, § 1304, Crawford & Moses' Digest, it is said: "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." The question then arises as to whether a will may be valid in part and invalid in part because of the undue influence of the beneficiary as to the invalid part. In Page on Wills, (2d ed.) § 195, page 341, it is said: "Undue influence avoids such part of the will as is caused thereby. If the whole will is the product of undue influence, it is thereby entirely avoided, including a clause of revocation, and a condition against the contest of the will by disappointed heirs. Fraud, which amounts to undue influence, vitiates a will like any other form of undue influence. If a part of the will is caused by undue influence, and such undue influence does not affect the remaining provisions of the will, the validity of the provisions which are not caused by such undue influence depends, in part, on whether it is possible to ascertain which portions are caused by the undue influence, and whether such portions, if ascertained, can be held to be invalid, and the rest can be given effect. If it is not practicable to ascertain what portions of the will were caused by undue influence and what were free from it, or if effect cannot be given to such provisions as are not caused by undue influence, without defeating the intention of the testator, the entire will is invalid." To the same effect see Schouler on Wills, (6th ed.) vol. 1, p. 400. There is no difficulty in this case in separating the valid portion from

the invalid portion as the testator directed his executor to sell his entire estate and then distribute the proceeds, one-fourth to the Masonic Home and School and three-fourths to Lula Garner. Therefore the bequest to the former will stand and the latter fail.

We therefore conclude that the court correctly construed the verdict of the jury and entered judgment accordingly, sustaining the bequest to the Masonic Home and School and invalidating the bequest to Lula Garner. Affirmed.

SMITH, MEHAFFY and BUTLER, JJ., dissent.