404 P.2d 110

**Alice Joann HUMMER and Patsy Ruth Hughes, Appellants,**

**v.**

**C. G. BETENBOUGH and Ronald Betenbough, a minor, by and through his attorney and guardian ad litem, Finis L. Heidel, Appellees,**

**Isa McClish, Intervenor-Appellee.**

**No. 7457.**

Supreme Court of New Mexico.

July 12, 1965.

Harris & Norwood, Roswell, for appellants.

Alex D. Solsbery, Roswell, for intervenor-appellee.

CHAVEZ, Justice.

This is an appeal from a judgment of the district court affirming the decision of the probate court, which decreed that the instrument tendered by petitioner C. G. Betenbough dated August 10, 1946, be admitted to probate as the last will and testament of Alice Eva Whitmire.

On May 12, 1958, appellant Alice Joann Hummer filed a petition for letters of

administration in the probate court of Lea County, New Mexico. The petition recited the death of Alice Eva Whitmire on May 2, 1958, and that deceased left a will dated May 26, 1941. On May 12, 1958, by order, Alice Joann Hummer was appointed administratrix of the estate of Alice Eva Whitmire and letters of administration issued to her.

On June 20, 1958, C. G. Betenbough filed in the probate court of Lea County a petition for probate of will and revocation of administration, which alleged that Alice Eva Whitmire left a last will and testament dated August 10, 1946. This later instrument left the sum of $1.00 to the testatrix's son Buford R. Horton; bequeathed to appellants, Hummer and Hughes, a one-half interest in certain lands in Lea County; bequeathed to testatrix's sister, appellee Isa McClish, a house and lot located in Lovington, New Mexico; and devised all of the rest, residue and remainder of decedent's estate to C. G. Betenbough and T. Betenbough; their heirs and assigns.

On December 16, 1958, the probate court entered its order revoking the letters of administration issued to appellant Alice Joann Hummer and admitting to probate the last will and testament offered by C. G. Betenbough dated August 10, 1946.

Appellants appealed the decision of the probate court to the district court and said court, on September 13, 1962, entered its decision favorable to C. G. Betenbough, proponent of the August 10, 1946, will. Judgment was entered declaring the August 10, 1946, will as the last will and testament of Alice Eva Whitmire. Appellants then perfected this appeal.

The district court found that Alice Eva Whitmire died May 2, 1958, owning certain real and personal property in Lea County, New Mexico; that on or about August 8, 1946, Alice Eva Whitmire was a resident of Lea County, New Mexico, and that on or about August 8, 1946, the instrument tendered by proponent of decedent's will was prepared by decedent's attorney, Donald Brown; that on August 10, 1946, decedent executed her last will and testament in the presence of W. E. Bondurant, Jr. and James T. Jennings, as attesting witnesses, and complied with all formalities respecting the execution thereof as provided by § 32–104, N.M.S.A., 1941 Comp., and § 30–1–4, N.M.S.A., 1953 Comp.; that at the time such instrument was executed and attested, the testatrix knew and understood the nature and effect of making and executing her last will and testament, understood the nature and extent of the property she then owned, and had an understanding and present recollection of the members of her family; that the preparation and execution of said will and testament was in accord with the instructions and expressed desires of the testatrix, and its execution by her was free and voluntary

without duress or undue influence by any person whomsoever.

The district court concluded as a matter of law that the instrument tendered by proponent C. G. Betenbough is the last will and testament of Alice Eva Whitmire and revoked all previous testamentary instruments made by decedent; that the objections to probate of will and revocation of administration by appellant should be overruled; and that all requested findings of fact and conclusions of law submitted by appellants be refused.

On August 10, 1946, the same day decedent executed the will offered by C. G. Betenbough, decedent's son Buford R. Horton filed a petition alleging that Alice Eva Whitmire was an incompetent and prayed that she be declared an incompetent, and that a guardian be appointed for her estate. At the conclusion of the incompetency hearing on August 17, 1946, the district court held that, at the time this suit was filed on August 10, 1946, Alice Eva Whitmire was incapable of handling her property. Judgment was entered decreeing: "That Alice Eva Whitmire is an incompetent person, the Court having found her so as of the date of the hearing, to-wit: August 17, 1946." The trial court appointed W. M. Beauchamp guardian of her person and property.

On July 12, 1946, decedent executed a deed conveying all of her property to her brother, C. G. Betenbough and to his wife. On the morning of July 13, 1946, decedent went to the clerk of the district court of Lea County, W. M. Beauchamp, and being disturbed about the deed, asked Mr. Beauchamp what he thought should be done. Mr. Beauchamp told her that the only thing that he could advise was for her to secure an attorney to help her and bring an action to set aside the deed and recover the property.

On July 18, 1946, decedent retained George T. Harris, a practicing attorney in Hobbs, New Mexico, to bring suit to recover the property deeded to decedent's brother. She told Mr. Harris that "she did not know why she conveyed it to her brother, that she did not mean to do it." Mr. Harris then prepared and filed the complaint against C. G. Betenbough seeking to revoke the deed.

A few days later, T. Betenbough and decedent came back to see Mr. Harris and T. Betenbough stated that decedent desired to have the suit dismissed. Decedent also stated she wanted the suit dismissed in answer to Mr. Harris' further questions. Mr. Harris refused to dismiss the suit because he believed that T. Betenbough was trying "to beat the old lady out of her property." T. Betenbough then stated—"Well, we will get another lawyer and fire you and dismiss the case." Mr. Harris replied that he would go into court and tell all he knew about the case. T. Betenbough

then offered Mr. Harris $1,000 as a fee and Mr. Harris refused, stating he had not earned it yet.

On August 12, 1947, a hearing was held in the district court on the lawsuit filed by Mr. Harris to recover the land deeded by decedent to her brother, C. G. Betenbough. Mr. Beauchamp, who had been named as guardian of decedent's estate in the incompetency hearing, was substituted as party-plaintiff in that action. At the conclusion of this hearing decedent was adjudged incompetent at the time that she executed the deed on July 12, 1946, and at all times subsequent thereto. The trial court found in its judgment that:

"\* \* \* the plaintiff, Alice E. Whitmire, was on the 12th day of July, 1946, and at all times subsequent thereto, up to and including the present date, incapable of managing her business affairs and it is necessary that she have a Guardian for such purpose, and was on said date of July 12, 1946, not in possession of her mental faculties and at the time of the execution of said deed aforesaid was not capable of knowing what she was doing in the execution of said deed."

On November 19, 1947, the superior court in and for the county of Los Angeles, found decedent to be mentally ill and in need of institutional care, and she was committed to the state hospital in Patton, California, for treatment. She remained there until her death.

The sole appellee on this appeal is testatrix's sister Isa McClish, the rights of C. G. and T. Betenbough having been previously adjudicated by this court in Hughes v. Betenbough, 70 N.M. 283, 373 P.2d 318.

Appellants' sole contention is that there was a lack of substantial evidence to support the findings of the trial court.

In Pentecost v. Hudson, 57 N.M. 7, 252 P.2d 511, this court discussed the substantial evidence rule and stated:

"It is a familiar rule of law which has been applied time and again by this court that the appellate court will not pass upon the weight of the evidence; and if there was a conflict of evidence the findings of the court below would be sustained. Citation of authorities is unnecessary.

"The plaintiff requested the trial court to make certain findings of fact which were refused. These requests are a challenge to the sufficiency of the evidence to sustain the findings made by the trial court. This court, has so repeatedly held that the evidence must be considered in an aspect most favorable to the appellees and that the facts found by the lower court are the facts to be reviewed by us and if supported by substantial evidence

they must be sustained, that a citation of authorities is unnecessary."

In Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426, substantial evidence is defined as follows:

"If reasonable men all agree, or if they may fairly differ, as to whether the evidence establishes such facts, then it is substantial. * * *"

In Lindley v. Lindley, 67 N.M. 439, 356 P.2d 455, involving an attempt to set aside gifts on grounds of the donor's mental incompetency, this court cited and quoted from Marchbanks v. McCullough, supra, and Pentecost v. Hudson, supra, and then stated:

"While we believe that the court equally well could have arrived at the opposite conclusion on the matter of the donor's competency, nevertheless this court will not pass on the weight of the evidence. Two psychiatrists testified that the donor was incompetent; three psychiatrists testified that she was competent; innumerable lay witnesses testified on each side; almost all agree that the donor was in frail health and hard of hearing and had a speech defect * * *, which the defendants' expert witnesses testified probably accounted for her apparent confusion at times. To further outline the evidence supporting a finding of competency is unnecessary. Suffice it to say that we are convinced that there is substantial evidence to support the finding of competency at the time of the gifts under scrutiny—certainly that reasonable men would fairly differ as to whether the evidence established such fact—which makes it substantial under our guiding principles above set forth."

The trial court found that on August 10, 1946, decedent had testamentary capacity to make the will of that date. Findings of fact, unless set aside because not supported by substantial evidence, are the facts upon which the case rests in this court on appeal. Bogle v. Potter, 72 N.M. 99, 380 P.2d 839.

It is appellants' contention that there was not substantial evidence to support the trial court's finding that the decedent had testamentary capacity. Had we been the trier of the facts, we might have found that decedent lacked testamentary capacity; however, we cannot weigh the evidence.

Without setting forth the testimony of appellee's witnesses, it is sufficient to state that the two attesting witnesses to the will, who are both lawyers, the lawyer who drew the will in question, and two doctors all testified that decedent was competent to make the will. There is evidence to the contrary. Examining the evidence in the light most favorable to appellee, there is substantial evidence to support the trial

court's finding that the decedent had testamentary capacity to make the will. Pentecost v. Hudson, supra.

Appellants further contend: (1) That C. G. and T. Betenbough, who were the principal beneficiaries of the will, exercised a confidential and fiduciary relationship with the testatrix and that the trial court erred in refusing to adopt appellants' requested finding of fact No. 14; and (2) that the will in question was executed due to the undue influence exercised on the testatrix and that the trial court erred in refusing appellants' requested findings of fact Nos. 15 and 18, and further that the trial court erred in finding that the will was made free from duress and undue influence.

We must first determine whether the Betenbough brothers sustained a confidential or fiduciary relationship to the decedent. In 94 C.J.S. Wills § 230, p. 1078, it is stated:

"With respect to undue influence on a testator, the terms 'confidential relation' and 'fiduciary relation' are synonymous, and exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another. * * *"

See also, 8A Words and Phrases, Confidental Relation, p. 90 et seq. In accord with these authorities we hold that the record shows there existed a fiduciary or confidential relationship between decedent and her brothers at the time decedent made the will in question.

Appellant next contends that the will in question was executed due to undue influence exerted on the testatrix, that there is a presumption that undue influence was exerted on the testatrix, and that there was no evidence whatsoever to rebut this presumption.

94 C.J.S. Wills, § 239, pp. 1091–1098, states the rule as follows:

"* * * the generally accepted rule is that a presumption of undue influence is not raised and the burden of proof is not shifted by the mere fact that a beneficiary occupies, with respect to the testator, a confidential or fiduciary relation, * * *.

"On the other hand, it is the general rule in practically all jurisdictions that undue influence is presumed and the burden of proof shifted so as to require the beneficiary to produce evidence which at least balances that of the contestant, when, in addition to the confidential relation, there exist suspicious circumstances, such as the fact that the beneficiary or person who benefits by the will took part or participated in the preparation or procuring of the will, * * *. A presumption of undue influence will arise if it is shown that, in addition to the confiden-

tial or fiduciary relation, the testator was dominated, or controlled by the beneficiary, or that the testator was weak-minded or in frail health and particularly suspectible to influence, or that the provisions of the will are unnatural and unjust, or that the person designated as a recipient of benefits thereunder unduly profited by the will."

To the same effect see the extensive discussions in 57 Am.Jur., Wills, §§ 389, 390, 396, 398, 400.

In Cline v. Larson, 234 Or. 384, 383 P.2d 74, the court stated:

"The burden of showing the exercise of undue influence at the time of the execution of a will is upon the contestant. * * * However, where a beneficiary of the will who sustained to the testatrix a confidential relationship participated in the drafting of the will, as in this case, a presumption of improper influence comes to the aid of the contestant. The presumption arises from the confidential relationship and the participation in the drafting. It requires the beneficiary to come forward with a satisfactory explanation for his actions. He must show that he did not abuse the confidential relationship and did not employ improper influence. The contestant need not offer at the outset any evidence that undue influence was exerted. The presumption suffices to call upon the proponent for an explanation. If a persuasive reasonable explanation is laid before the court, the contestant must meet it if he expects to prevail. * * *"

See also, In re Joiner's Estate, (Fla.1963), 156 So.2d 161; Redmond v. Steele, 5 Ill.2d 602, 126 N.E.2d 619; Croft v. Adler, 237 Miss. 713, 115 So.2d 683; In re Rittenhouse's Will, 19 N.J. 376, 117 A.2d 401; In re Thompson's Estate, 387 Pa. 82, 126 A.2d 740; In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682; In re Nelson's Estate, 72 Wyo. 444, 266 P.2d 238.

In Dean v. Jordan, 194 Wash. 661, 79 P.2d 331, it is said:

"* * * we believe and hold that the facts in this case did raise a presumption of undue influence and that the presumption was of such strength as to impose upon the proponent the duty to come forward with evidence sufficient at least to balance the scales and restore the equilibrium of evidence touching the validity of the will. The facts which move us to this conclusion are these: (1) The age and physical condition of the testatrix; (2) her prior mental history; (3) the fiduciary and confidential relationship existing between the testatrix and the beneficiary; (4) the opportunity to exercise an undue influence; (5) the participation in the procurement of the will;

and (6) the unusually large proportion of the estate received by the beneficiary."

In Brown v. Cobb, 53 N.M. 169, 204 P.2d 264, this court held that the evidence justified the lower court's cancellation of a lease executed by the deceased. The tenant, aided by a trusted employee of the deceased, had exerted undue influence on the deceased by taking advantage of her mental and physical weakness caused by a disease, and persuaded her to execute a lease for rent unfair to deceased and her heirs. We there said:

"We make no attempt to define 'undue influence'. Neither is it susceptible of any fixed formula. Whether undue influence is present is always a question to be determined from the circumstances of the particular case, and any attempt to define it may well suggest a clear path of evasion. But, undue influence in the sense as used means influence, improperly exerted, which acts to the injury of the person swayed by it or to the injury of those persons whom she would have benefited. It is immaterial whether such influence is exercised directly or indirectly.

"At 6 R.C.L. Sec. 53, 'Undue Influence', we find the following: '* * * In order to render this rule applicable, it is not necessary that one of the parties should occupy such a dominant position towards the other as to justify the inference that the latter was without power to assert his will in opposition to the former. Nor is the rule confined to cases in which the relation between the parties is of a strictly fiduciary nature. It applies whenever a confidential relation exists as a fact, * * *. The mental weakness of one of the parties is an important element in raising a presumption of undue influence or in determining its existence. It is undoubtedly the law that when, by physical or mental superiority, one obtains an advantage in a transaction over another who is enfeebled in mind and body, or by disease or old age, the person obtaining such advantage will be required to show that the transaction was a fair one.' * * *

"Black on 'Rescission and Cancellation', Vol. 2, Sec. 247 says: '* * * And if a gift or grant is made by a person thus enfeebled by age and infirmity to one shown to possess an influence over him, and especially if the transfer does not appear to be based upon any proper consideration or to be prompted by any adequate motive, a very strong showing of undue influence will have been made.' * * *"

In Calloway v. Miller, 58 N.M. 124, 266 P.2d 365, this court quoted from Bancroft's Probate Practice, 2d Ed., Vol. 1, § 209, p. 514, and stated in part:

" ' "Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular case. These general rules have been stated and restated in many hundreds of different cases in the courts of every jurisdiction considered authority in this country. Different language is used by the different courts, but one main underlying principle, whatever the phraseology, is found in all; and that is that the evidence required to establish it need not be—indeed, cannot be—of that direct, affirmative, and positive character which is required to establish a tangible physical fact. The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred." ' "

In regard to the proof required to establish undue influence, in Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418, we stated:

" * * * the exercise of undue influence in order to secure something of value from the person or persons so influenced is but a specie of fraud, and it has been well said by this court that fraud is properly made out by marshalling the facts and circumstances surrounding a given transaction, and deducing therefrom a fraudulent purpose or design where such manifestly appears. That circumstantial evidence alone is in most cases available, because fraud is peculiarly a wrong practiced in secrecy and circumvention, not traceable to open declarations or proclamations of the wrongdoer, but by indications which are usually attended with studious efforts to conceal. * * *

" * * * Human experience teaches that a case could be rarely imagined where direct conversations of persuasion and coaxing such a feeble-minded person to execute such an instrument could be proven, except by the person so unduly influenced. Persons who resort to such shady transactions are too shrewd and designing to be thus caught. Such arts are practiced in the absence of witnesses or in the presence of those who are aiding or abetting the transaction. The very facts here disclosed, that is, parting with house and home without consideration by one who is cursed with poverty, almost 70 years old, infirm, mentally weak and feeble, may well support the conclusion that she was compelled so to do by undue influence of some character. * * *".

See also, McElhinney v. Kelly, 67 N.M. 399, 356 P.2d 113.

The record in the instant case shows that decedent was 72 years of age when she

made the will in question and that she was dominated and coerced by her brothers to the point that she was afraid of them, even when not in their presence. Decedent was apparently in good physical health, except for bad eyesight. There is evidence that decedent was easily influenced, made no independent suggestions herself, agreed with anything anyone stated to her, and that she agreed with what the last person to talk to her had to say. The only evidence in the entire record, which pointed to the fact that undue influence was not present, was testimony by the attorney who prepared the will. Said attorney stated that he had no knowledge of any pressure being exerted on decedent in making the will, and that he looked carefully for such pressure or influence when he prepared the will. Decedent always rode to Roswell with her brothers to see the attorney and there was no reason for her to show any signs of influence, because she was apparently so dominated by her brothers that, when she arrived in Roswell, she was thoroughly convinced as to what her will should contain.

In view of the authorities cited, we hold that the circumstances surrounding the execution of the will in question give rise to a rebuttable presumption that the brothers of decedent exerted undue influence on decedent. The facts compelling this conclusion are: (1) The age, poor eyesight and lack of education of decedent; (2) dece-

dent's mental history; (3) the fiduciary and confidential relationship existing between testatrix and her brothers; (4) the opportunity to exercise an undue influence; (5) the brothers' participation in the procurement of the will; and (6) the unusually large proportion of the estate received by the brothers as beneficiaries.

This court has not previously determined the extent of evidence required to be introduced for the presumption of undue influence to lose its effect. 57 Am.Jur., Wills, § 437, pp. 310–311, states in part:

"* * * A will must be denied probate where the presumption of undue influence arises on the evidence, unless the proponent produces evidence in rebuttal which, at least, balances the prima facie showing of undue influence.

"* * *

"The strength of a presumption of undue influence in reference to the proof required to overcome it depends upon the particular facts and circumstances of each case. It varies with the strength or weakness of the mind of the testator. A presumption of undue influence arising from proof that a favored beneficiary, who stood in a confidential relation to the testator, participated in the drafting of the will or in preparing for its execution may be overcome by showing that no pres-

sure was exercised, that the will was well understood by the testator, that its execution was the free and voluntary act of the testator, * * * or that the favored beneficiary did not abuse or betray the confidence reposed in him by the testator. * *"

See also, 20 Am.Jur., Evidence, § 230, pp. 225–226, which states:

" * * * Where however, there is a confidential or fiduciary relationship between the parties to a transaction which is alleged to have been induced by the exercise of undue influence or duress, a presumption of the exercise of such duress or undue influence may arise. This view proceeds upon the theory that where one person is put in the power of another, the law raises the presumption that any deal between them is through the dictation of the one in a situation to control the other. This presumption arising from confidential relations may be rebutted by competent evidence, as by proof that the parties dealt as strangers and that no unfairness was used, that the facts in the knowledge of the one in the superior position affecting the matter were communicated to the other, or that the entire transaction was made in perfect good faith and was equitable and just."

In accord with the above authorities we hold that, based upon the strength of the presumption in the instant case and the lack of evidence in rebuttal, appellee failed to introduce sufficient evidence to rebut the presumption, and the trial court erred in holding that there was a lack of undue influence exercised by the brothers of decedent. We realize the difficulty involved in setting forth the amount of evidence necessary for the rebuttal of a presumption of undue influence, as this depends upon the facts and circumstances of each particular case. It appears to us that the attorney who prepared the will, in effect, stated, that if undue influence were exerted on decedent, he had no knowledge of such influence. We, therefore, hold that this testimony, standing alone in the face of the strong presumption to the contrary, is not sufficient to rebut the presumption of undue influence.

Our holding, however, that there was undue influence exerted on the testatrix by her brothers, does not dispose of this case. The sole appellee is decedent's sister and there is no allegation or contention that she exerted any undue influence on decedent in connection with the will in question. We now ascertain what effect our determination of undue influence exerted by the brothers of decedent has on the validity of the provisions of the will which were not directed to the brothers. The invalid provision of the will in question is the residuary clause consisting of the bequest to the brothers. Those portions of the will directed to de-

cedent's sister (appellee) and appellants, were by way of specific legacies in which appellee was bequeathed the house and lot in Lovington, and appellants were given a one-half interest in certain lands in Lea County.

The Betenbough brothers are entirely precluded from taking any of decedent's property, either by will or intestate shares. Hughes v. Betenbough, 70 N.M. 283, 373 P.2d 318. Therefore, decedent died intestate as to all of her property not included specifically in the will, if the remainder of the will in question is upheld.

In 94 C.J.S. Wills §§ 235, 236, pp. 1084–1085, it is stated:

"* * * undue influence may invalidate a will in favor of someone other than the person exerting such influence. In some jurisdictions it has been held that a will may be invalidated because of undue influence of which the beneficiary was ignorant, and that it is immaterial whether or not the influence was exerted at the request or with the consent of the beneficiary, although elsewhere it has been held that, to vitiate a will, the influence must emanate from the beneficiaries or those interested in them. * * *

"*Partial invalidity*. In the absence of statutory provision to the contrary, it is generally held that, where some of the provisions of a will are void for fraud or undue influence, which can be separated from the valid parts of the will without doing injustice to the beneficiaries, or impairing the general intent of the testator, the whole will is not rendered invalid, and the portions not affected with undue influence will be given effect. * * *"

And in 57 Am.Jur., Wills, § 366, pp. 266–267, this language is found:

"* * * the general rule is that parts of a will may be held valid notwithstanding other parts are invalid on account of undue influence exercised upon the testator, provided the parts so affected are separable so that the will remains intelligible in itself if the invalid parts are deleted upon probate.

* * *

"The general rule as stated above is subject to the limitation that it is not applicable when it will defeat the manifest intent of the testator, interfere with the general scheme of distribution, or work an injustice to other heirs. The doctrine is not applicable where it is impossible to determine to what extent the specific legacies have been tainted by the undue influence; in such a situation the whole will must either be refused probate or admitted thereto. Moreover, the rule which permits the probate of part of a will notwithstanding other parts are declared invalid as

affected by undue influence does not mean that a legatee may sustain his bequest on the ground that he did not participate in bringing undue influence to bear on the testator, where it appears that the entire instrument was the result of undue influence. * * * "

1 Page on Wills, Bowe-Parker Rev., §§ 15.11, 15.12, pp. 740–743, state:

"Undue influence avoids such part of the will as is caused thereby. If the whole will is the product of undue influence, it is thereby entirely avoided,

* * *.

" * * *

"If a part of the will is caused by undue influence, and such undue influence does not affect the remaining provisions of the will, the validity of the provisions which are not caused by such undue influence depends, in part, on whether it is possible to ascertain which portions are caused by the undue influence, and whether such portions, if ascertained, can be held to be invalid without destroying the intention of the testator. If it is not practicable to ascertain what portions of the will were caused by undue influence and what were free from it, * * * the entire will is invalid.

" * * *

"In most of the cases in which undue influence is held to render only a part of a will invalid complete relief will be given by such an order to the disappointed heirs and next of kin; and it is this partial invalidity which they seek. They are generally cases in which the undue influence was exercised to cause an unequal distribution between heirs and next of kin of equal degree to testator. In the cases in which it is held that undue influence cannot render a part of a will invalid, the heirs and next of kin are completely disinherited; and declaring invalid the gifts in favor of the person who exercised the influence, or which were primarily intended by such person, will frequently give no relief to the heirs or next of kin. In cases of this sort, it is probably correct to say, as a fact, that the entire will is the product of undue influence, even though the party who exerted it may not have been able to secure the entire benefits."

We note that the cases cited by the authorities quoted supra primarily have different fact situations from each other and from the case before us. Therefore, our decision is governed by the general rules hereinabove discussed and the particular facts and circumstances of this case.

 Since there is no evidence concerning the reasons or basis for the gift of the house to intervenor-appellee, in the light of the above authorities and without any wish

to deprive appellee of her small inheritance, we hold that the entire will is invalid as a result of the undue influence of the brothers of testatrix.

The cause is reversed and remanded to the district court with direction to proceed in accordance with this opinion.

It is so ordered.

CARMODY, C. J., and MOISE, J., concur.

NOBLE, J., dissenting.

COMPTON, J., not participating.

NOBLE, Justice (dissenting).

I agree that even without the Betenbough brothers' disclaimer and waiver of the right to inherit from their sister, the residuary clause of the will is invalid because of the undue influence exerted by them on their sister. But, I am convinced that there is no evidence in this case from which it can be said that such undue influence extended to the gift of the home to testatrix' sister.

The basis of the influence exerted by the brothers is clearly stated in a former decision by this court involving all of the property owned by the testatrix, except the home

given to Isa McClish. In Hughes v. Betenbough, 70 N.M. 283, 373 P.2d 318, this court said that Alice Whitmire (testatrix here) conveyed certain real estate to her brother, C. G. Betenbough, who executed an agreement to provide for his sister during her lifetime. Mrs. Whitmire brought suit to cancel the deed. In an effort to settle the litigation, on the following day after an effort to have the suit dismissed proved futile, the brothers took Mrs. Whitmire to an attorney "for the purpose of having her draw a will naming them as residuary legatees by which they would take the same property by will." C. G. Betenbough and his wife executed a declaration of trust whereby they agreed to hold the property in trust for Mrs. Whitmire during her lifetime and, upon her death, to convey the same according to her last will and testament.

"On August 10, 1946, Mrs. Whitmire was again taken by the two brothers to the attorney's office where she executed her last will and testament which named C. G. Betenbough and T. Betenbough as co-executors. She bequeathed $1.00 each to her former husband and to Buford Horton, her son; devised certain property to the two daughters of Buford Horton, appellees herein, a house and personal items to a sister, and left the residue and remainder to 'T. Betenbough and C. G. Betenbough, their

heirs and assigns, to share and share alike.' "

As a part of the settlement of the suit to cancel the deed, it was agreed that Buford Horton was the sole heir at law of Mrs. Whitmire, and after identifying the suit then pending, the brothers disclaimed all right, title and interest to any and all property of Mrs. Whitmire and renounced all right of inheritance by will or by descent and distribution from their sister. Title to all of the property, except the home left to Isa McClish, was quieted in testatrix' granddaughters (the protestants here).

No rule of law has been pointed to by the majority supporting the holding that there must be evidence concerning the reasons for the basis of the gift of the house to testatrix' sister. On the contrary, the proof that the undue influence extended to the gift to Isa McClish must be clear, cogent and convincing. McElhinney v. Kelly, 67 N.M. 399, 356 P.2d 113. I think it is clear that the majority agree that there is actually no proof that the undue influence affected the gift to Isa McClish. No determination of such a fact was made by the trial court. This court can certainly not make such a finding without weighing the evidence.

The majority say that the general rules they have quoted require a holding that the entire will is vitiated by the undue influence exerted by the brothers. The question of whether part of a will not affected by undue influence can be probated is one of first impression in New Mexico, but most states hold that if a part of the will, not caused by undue influence, can be separated from the rest, leaving it intelligible and complete in itself, only the portion caused by undue influence will be invalidated and the rest admitted as valid. 1 Page on Wills (Bowe-Parker Rev.) § 15.12. The following are some of the cases so holding. Hyatt v. Wroten, 184 Ark. 847, 43 S.W.2d 726; Pepin v. Ryan, 133 Conn. 12, 47 A.2d 846; Wombacher v. Barthelme, 194 Ill. 425, 62 N.E. 800; In re Eiker, 233 Iowa 315, 6 N.W.2d 318; McCarthy v. Fidelity Nat. Bank & Trust Co., 325 Mo. 727, 30 S.W.2d 19, 69 A.L.R. 1122; 16 Iowa L.Rev. 119; 36 U.Mo.Bull. 48 L.Ser. 35; In re Peppler, 132 N.J.Eq. 421, 28 A.2d 474.

Agreeing that the residuary clause was induced by undue influence, we then examine the will to determine whether the remainder, not so affected, can be separated from it. 1 Page on Wills, supra, § 15.12, p. 742, has this to say with respect to undue influence exerted as to the residuary clause:

"If undue influence has been exerted as to the residuary clause only, the residuary clause is invalid but the other gifts are valid; * * *."

I suggest that there is nothing in the general rules quoted by the majority which requires invalidating more than the residuary clause in the Whitmire will. It is clear that the remainder of the will, omitting the residuary clause, is intelligible and complete in itself and that the residuary clause, affected by undue influence, can be separated from the remainder as to which there is no proof of undue influence. It has not been suggested that this is the usual case outlined in the quotation from 1 Page on Wills, supra, § 15.12, where undue influence was exerted to cause an unequal distribution between heirs of equal degree to the testatrix. Under those circumstances, the author of Page thinks the entire will is the product of undue influence because the remainder does not express the testator's will.

Under our statement in Hughes v. Betenbough, supra, of the facts concerning the brothers' undue influence, controlling upon us in this case, it is not impossible to determine to what extent specific legacies have been tainted by the undue influence. Their purpose to secure the property that had been deeded to them was made clear in Hughes v. Betenbough, supra.

I think only the residuary clause should be invalidated and the remainder admitted to probate. I, therefore, dissent from the majority opinion.