775 P.2d 1300

In the Matter of the **ESTATE OF Amelina Padilla GONZALES, Deceased.**

**Margarito MARTINEZ,
Petitioner–Appellant,**

v.

**Philip CANTU, Personal
Representative–Appellee,**

and

**Guillerma Gonzales de Ortega,
Contestant–Appellee.**

No. 10295.

Court of Appeals of New Mexico.

Oct. 27, 1988.

Certiorari Quashed Feb. 2, 1989.

Robert Dale Morrison, C. Kristine Osnes, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for petitioner-appellant.

**584**

Eliu E. Romero, Taos, Winston Roberts–Hohl, Santa Fe, for appellees.

## OPINION

MINZNER, Judge.

Petitioner Margarito Martinez appeals from the trial court's order setting aside the will of Amelina Padilla Gonzales on the ground of undue influence. He contends that the trial court erred in concluding that he had the burden of rebutting a presumption of undue influence and that he failed to do so. *See* NMSA 1978, § 45–3–407. We reverse.

Martinez is decedent's grandson. He presented the will for informal probate and was appointed the personal representative of the estate. Contestant Guillerma Gonzales De Ortega, a daughter of decedent, contested the will, alleging improper execution, lack of testamentary capacity, and undue influence.

The evidence showed that decedent owned several parcels of land and executed deeds to some of the land at the same time she executed her will. Through a combination of *inter vivos* gifts by deed and testamentary provisions, she divided her property among her three children and Martinez. Martinez was one of three witnesses to the will.

After a trial on the merits, the trial court entered findings and conclusions and ordered the will set aside. He also set aside the *inter vivos* gifts. The trial court found that decedent was 81 years old at the time the deeds and will were executed, in poor health but mentally alert, and unable to read because of her failed eyesight. The trial court further found that decedent spoke and understood English poorly and that Martinez had a confidential relationship with decedent. The trial court concluded: (1) "Without specifically finding that undue influence did exist, such evidence of it exists that undue influence is presumed," and (2) "Martinez has failed to rebut the presumption, and he had the burden of so doing."

Martinez first brought a direct appeal. This court ruled, in a memorandum opinion, that the order was not final. *See Martinez v. Gonzales de Ortega*, Ct.App. No. 10,124 (Filed September 29, 1987). Thereafter, the trial court entered an order setting aside the will and certifying issues for an interlocutory appeal. We granted an interlocutory appeal from the later order.

Martinez argues that since the enactment of the Probate Code, NMSA 1978, Sections 45–1–101 to 45–7–401 (Orig.Pamp. and Cum.Supp.1988), there can no longer be a presumption of undue influence. In the alternative, he argues that the findings of the trial court do not support such a presumption and, if they did, he met the burden of rebutting the presumption.

Martinez' argument on appeal challenges the trial court's conclusions of law in two respects. He contends first that the trial court erred in considering the issue of whether a presumption arose, and second that the conclusions are not supported by the findings and that, as a consequence, the interlocutory order cannot stand. *See Thompson v. H.B. Zachry Co.*, 75 N.M. 715, 410 P.2d 740 (1966).

Martinez' argument that there is no longer a presumption of undue influence is based on Section 45–3–407, which sets out the burdens of proof in formal testacy proceedings and contested cases. Under that section, "[p]roponents of a will have the burden of establishing prima facie proof of due execution * * * [while] [c]ontestants * * * have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation." Although this section contains no reference to presumptions, this court has recognized that a party may rely on a presumption to establish his or her prima facie case. *See In re Estate of Kelly*, 99 N.M. 482, 660 P.2d 124 (Ct.App.1983).

Under cases decided prior to the enactment of the Probate Code, it is clear that the contestant of a will had the initial burden of proof. If the contestant presented evidence sufficient to raise a presumption

of undue influence, then the proponent was required to come forward with an alternative explanation regarding the appearance of undue influence. *See Hummer v. Betenbough*, 75 N.M. 274, 404 P.2d 110 (1965). Prior case law did not express this result in terms of requiring proof of a prima facie case by the contestant.

Section 45–3–407 now requires that the contestant establish a prima facie case of undue influence. Once that initial burden has been met, the proponent has the burden of presenting evidence in opposition to the prima facie proof. If the proponent does not meet this burden, the contestant's evidence might require a finding of undue influence. *See In re Estate of Foster*, 102 N.M. 707, 699 P.2d 638 (Ct.App.1985). In some cases, however, the contestant's prima facie case might present issues for the finder of fact. *See generally McCormick on Evidence* § 338 (3d ed. 1984).

In making a prima facie case, we believe contestant may be entitled to rely on a presumption. *See In re Estate of Carpenter*, 253 So.2d 697 (Fla.1971). "[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption * * * *" *See* SCRA 1986, 11–301. The trial court's conclusions are consistent with a determination that Gonzales de Ortega satisfied her burden of making a prima facie case by establishing facts sufficient to support a presumption of undue influence, which proponent was required to meet. Because a contestant may make a prima facie case by raising a presumption, and because a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet it, we are not persuaded that the trial court misinterpreted the Probate Code in making this determination. § 45–3–407; R. 11–301.

Thus, we reject Martinez' first argument. However, the trial court's findings do not support this determination. Thus, the judgment cannot stand. *See Thompson v. H.B. Zachry Co.*

The intent of the drafters of Section 3–407 of the Uniform Probate Code was to clarify the law by stating what they believed to be the standard rules followed in will contest cases. *See* Comment to Uniform Probate Code, 8 U.L.A. § 3–407 at 279–280 (1983). Section 45–3–407 is equivalent to Section 3–407 of the Uniform Probate Code. Thus, we conclude that Section 45–3–407 was intended to clarify the previously existing case law concerning undue influence, rather than to effect a substantial change. Prior case law is, therefore, still persuasive on certain issues. For example, prior cases on the issue of what evidence is necessary to raise a presumption of undue influence are relevant.

Under prior law, evidence that the beneficiary had a confidential relationship with the testator was sufficient to raise a presumption of undue influence if other suspicious circumstances were shown. *Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968); *see generally In re Will of Ferrill*, 97 N.M. 383, 640 P.2d 489 (Ct.App. 1981) (decided after the enactment of the Probate Code). Suspicious circumstances include (1) an elderly testator in weakened physical or mental condition; (2) lack of consideration for the bequest; (3) a disposition that is unnatural or unjust; (4) the beneficiary's participation in procuring the will; and (5) domination of the testator by the beneficiary. *In re Will of Ferrill.*

The trial court's finding that a confidential relationship existed between decedent and Martinez is not sufficient to support a presumption of undue influence without finding suspicious circumstances. *Galvan v. Miller; In re Will of Ferrill.* Gonzales De Ortega argues that decedent's age, health, inability to read, and poor understanding of English, and Martinez' presence at the execution of the will are sufficient suspicious circumstances to find that a prima facie case of undue influence was made. We disagree.

No New Mexico case has based a presumption of undue influence on the fact

that the testator was elderly without evidence that the testator's age had affected his or her mental ability. However, in this case, the trial court specifically found that decedent was mentally alert. Similarly, poor health and the inability to read, without a showing of its effect on a testator's mental ability, are not sufficient to deny probate of the testator's will. In *Ferrill,* for example, a doctor testified that the testator could have been easily influenced because she suffered from pain and lack of oxygen. There was no such finding here.

The fact that decedent spoke and understood English poorly also is insufficient to deny probate to her will, unless there is evidence that her inability to speak English affected her understanding of the proceedings. The trial court, however, did not so find. Rather, the trial court noted that the execution of the will was conducted entirely in Spanish, a language decedent spoke and understood.

Martinez' presence at the execution of the will supports the finding of a confidential relationship. *In re Will of Ferrill.* The record indicates that he was present because he had taken decedent to the office of the lawyer who drafted the will. The trial court found that decedent had instructed the lawyer to make arrangements for her. Under these circumstances, Martinez' presence cannot be considered a suspicious circumstance.

The fact that Martinez was a signatory witness to the will is more troublesome. We note that under the Probate Code, a will is not invalid because it was signed by an interested witness. *See* § 45-2-505(B). However, that does not dispose of contestant's argument as to undue influence.

The Code also provides that a will requires only two witnesses. *See* § 45-2-502(A). Because there were two other witnesses to the will, Martinez' signature as witness was unnecessary to prove due execution. It cannot be said that Martinez participated in procuring the will by securing its execution when his signature was unnecessary.

None of the individual circumstances surrounding the execution of decedent's will is sufficient to raise a presumption of undue influence. That leaves the question of whether a presumption of undue influence arises when the trial court's findings are considered as a whole. We think not.

A review of New Mexico cases decided prior to the enactment of the Code indicates that a presumption of undue influence ordinarily is based on evidence of mental weakness or susceptibility to influence. In *Hummer,* the decedent had been adjudicated mentally incompetent. The decedent in *Galvan* was found to be in poor mental health. In *Ferrill,* there was testimony by the testator's doctor that she would have been susceptible to influence, and she left a ranch worth over $800,000 to a couple that worked for a neighboring rancher. *See also Calloway v. Miller,* 58 N.M. 124, 266 P.2d 365 (1954); *Cardenas v. Ortiz,* 29 N.M. 633, 226 P. 418 (1924). It is, after all, the effect of influence on a testator that is ultimately at issue.

In this case, however, decedent was found to be mentally alert. She was elderly and sick, but this is not unusual or reason to cause suspicion. Many people defer drafting their wills, but they are not all unduly influenced. To deny probate to wills drafted by the elderly and physically weak would circumvent one of the major purposes and policies of the Probate Code: "to discover and make effective the intent of a decedent in distribution of his [or her] property[.]" § 45-1-102(B)(2). We note that the trial court found that the lawyer met with decedent on several occasions, drafted documents based on their conversations, and reviewed the documents with her. Their conversations were in Spanish.

Further, the result does not seem unusual or suspicious. *Cf. In re Will of Ferrill* (decedent left will disinheriting her family and leaving substantially her entire estate to a couple who worked for a neighboring rancher). The trial court found that the *inter vivos* gifts and the will were part of a single plan. The trial court also found that decedent had "partially raised" Martinez. Thus, the record indicates that decedent divided her property among her closest relatives. The record does not indicate that the shares are greatly disproportionate.

We conclude that the findings as to suspicious circumstances are insufficient to raise a presumption of undue influence. Thus, the trial court erred in holding that a presumption of undue influence arose. The trial court did not otherwise find undue influence. We hold that contestant did not establish a prima facie case of undue influence and did not satisfy her burden under Section 45–3–407. Therefore, we do not need to consider whether the evidence Martinez produced would have met a presumption of undue influence. *See* R. 11–301.

We do not know whether the trial court intended to conclude that where a presumption of undue influence is unrebutted, the trial court must enter a finding of undue influence. *See In re Estate of Carpenter.* We also do not know whether Martinez intended to argue that such a conclusion would have been erroneous. *Contra id.* In any event, in view of our disposition, we do not reach this issue.

Gonzales De Ortega has contended on appeal that the trial court's decision was based on a finding that Martinez did not meet his burden of proof on the issue of due execution. She asks that we consider the trial court's oral remarks in order to affirm the judgment. *See Ulibarri v. Gee,* 106 N.M. 637, 748 P.2d 10 (1987). However, we do not interpret the trial court's remarks as consistent with such a ruling. Thus, we do not address this argument.

We conclude that it was error to deny probate to the will of Amelina Padilla Gonzales. We assume, as Martinez suggested at oral argument, that the trial court will reconsider its decision to set aside the *inter vivos* gifts made at the time of the will. The order setting aside the will is reversed, and the case is remanded for further proceedings consistent with this opinion. No costs are awarded.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.