356 P.2d 113

Violet B. McELHINNEY, Petitioner-
Appellee,

v.

Helen KELLY, Contestant-Appellant.

No. 6582.

Supreme Court of New Mexico.

Oct. 18, 1960.

Smith, Kiker & Kitts, Albuquerque, for appellant.

Kenneth A. Patterson, A. F. Sceresse, Albuquerque, for appellee.

NOBLE, Justice.

Contestant appeals from a judgment in an original proceeding in the district court admitting a will to probate. Three questions are presented. (1) Was the will attested as required by statute, (2) is there substantial evidence to support a finding of testamentary capacity, and (3) should probate of the will be denied because of undue influence.

George F. McElhinney, the testator, was a man 72 years of age who, at the time of execution of the will offered for probate, was a patient at the Veteran's Hospital in Albuquerque suffering from lung cancer of which he died January 17, 1958. Testator was a widower who had lived at Truth or Consequences for some time prior to his entry into the hospital in July 1957, in a house owned and furnished to testator by his sister, the contestant. Testator's sister sent him $200 each month during his stay in Truth or Consequences.

Proponent was employed by testator as housekeeper from about January 1956 to May 1957. In addition, proponent waited upon and took care of testator. When testator entered the hospital proponent secured employment in Albuquerque and visited testator regularly. Testator had asked proponent to marry him on more than one occasion. They were married Decem-

ber 10, 1958 and this will executed the following day.

The substance of the testimony of testator's physician was that he was as clear and had as good judgment as would be expected of one of his age and physical condition and that he was clear and rational until the evening before his death. The doctor did say that anyone his age and with his illness could be influenced. There was conflicting testimony of non-medical witnesses that they did not consider testator to be of sound mind and statements by proponent, that testator's mind was affected, testified to by others.

There was testimony of a history of syphilis suffered by testator, however, a post mortem examination disclosed that neither the brain nor central nervous system had been affected by any disease. At the time of his marriage he had the usual blood tests, all of which proved negative.

It is contended that the will was not attested as required by § 30-1-6 N.M.S.A. 1953 Comp., which reads:

"The witnesses to a written will must be present, see the testator sign the will, or some one sign it for him at his request as and for his last will and testament, and must sign as witnesses at his request in his presence and in the presence of each other."

It is admitted that all of the statutory requirements were complied with except it is contended that the witness Hawkins was not actually looking at the other witness when such witness affixed his signature to the attestation clause. The two witnesses were likewise patients of the hospital and were called into testator's room to act as witnesses. Testator signed the will while in his bed. The witnesses and testator's attorney were in the room and all standing beside or near the bed. The evidence is not clear as to whether the witness Hawkins remembered seeing Nilson sign his name to the attestation clause or whether he was looking out the window at the moment—his own testimony is contradictory. It is clear however, that he was in a position where he could have seen if he had looked. Both witnesses, in addition to signing the attestation clause, initialled the first page of the will. Hawkins did see Nilson initial the first page.

The trial court found:

"2. That George E. McElhinney, deceased, on December 11, 1957, signed his Last Will and Testament (here in evidence as Proponent's Exhibit Numbered Three), in the presence of Theodore R. Nilson and Ray C. Hawkins, each of whom saw the deceased sign his name and signed as witnesses at deceased's request in his presence and in the presence of each other.

"3. That said Last Will and Testament included an attestation clause

signed by both witnesses, which declared that on the date of the Will, the same was signed, sealed, published and declared by the testator, and that the witnesses, in his presence and at his request, and in the presence of each other, set their names thereto as subscribers and witnesses."

If the trial court based the findings upon a determination that the witness Hawkins could not remember whether he saw the other witness sign his signature to the attestation clause, there is a presumption of statutory compliance. In re Akin's Estate, 41 N.M. 566, 72 P.2d 21. If the trial court determined from the evidence that the witness was looking out the window at the instant Nilson affixed his signature to the attestation clause, the initialling of the first page of the will was part of the attestation and there is no dispute but that Hawkins saw Nilson initial the instrument. There is substantial evidence to support the findings.

Appellant insists that because the statute requires the witnesses to see the testator sign we should construe it to likewise require that each witness actually see the other witness affix his signature. We have found no decision requiring such construction and counsel have cited none.

■ It is well established that the reason for requiring the presence of witnesses to a will and to the signing by the testator is to establish the authenticity of the instrument and to have someone who can so testify. A rule, however, which would require the proponent of a will to establish, that witnesses actually present and who could have seen each other sign, did not momentarily close their eyes or look away at the instant of signing by the other witness, would make the validity of the will dependent, not upon its due execution or the capacity of the testator, but upon the fact that there was not a momentary lapse of attention by a witness. We see nothing in the statute which requires us to add, by judicial construction, language not employed by the legislature.

■ We conclude that our statute does not require each witness to a will to actually see the other witnesses affix their signature, but only that they be in the presence of the testator and of each other in such a way that they could have seen one another sign if they had looked. Blanchard's Heirs v. Blanchard's Heirs, 32 Vt. 62; In re Claflin's Will, 75 Vt. 19, 52 A. 1053, 58 L.R.A. 261; Allen v. Jones, 259 Ala. 98, 65 So.2d 217; 2 Bowe-Parker: Page on Wills, § 19.122 and cases cited there. This is in substantial accord with our reasoning in In re Akin's Estate, supra.

■ It is next contended that proponent failed in her burden of establishing testamentary capacity. The will was offered for

probate originally in the district court and its probate objected to by contestant. The will was admitted to probate. The proponent upon original offer for probate has the burden of establishing testamentary capacity when the mental capacity of the testator is challenged by evidence. In re Owens' Estate, 63 N.M. 263, 316 P.2d 1077.

The trial court found:

"5. That on December 11, 1957, the testator was of sound and disposing mind and memory."

■ The specific challenge to the testimony is that none of it is directed to the controlling elements of testamentary capacity, i. e. (1) knowledge of the meaning of the act of making a will, (2) knowledge of the character and extent of the estate, and (3) knowledge of the natural object of testator's bounty. Calloway v. Miller, 58 N.M. 124, 266 P.2d 365; In re Armijo's Estate, 57 N.M. 649, 261 P.2d 833.

About November 1, 1957 testator consulted with his attorney relative to other legal matters and during one of the consultations said he wanted to make a will. After his marriage the will offered for probate was made at the suggestion of testator's attorney—that is, he suggested a new will in view of testator's marriage and advised testator he had several alternatives in the disposition of his property. Testator directed his attorney how he wanted to leave his property without any aid. This shows a layman's general knowledge of the meaning of the act of making a will.

It is admitted that other than his wife, testator's only heir was his sister, the contestant. There is evidence that testator was aware of his sister and further that some time prior to making the will, testator's sister had either stopped payment on his bank account or he believed she had.

■ Appellant says there is not a scintilla of evidence that testator knew the nature and extent of his property. It is conceded that it consists of personal property only. The undisputed testimony is that testator said he had saved some money from a settlement as the result of an automobile accident and from social security payments, and that he wrote all checks for living expenses. He told proponent he had bought a motor for his boat which he could not afford and could no longer pay her salary as housekeeper. He knew when his sister had payment stopped on a check and employed an attorney to investigate. There is substantial evidence that the testator knew, at least in a general way, the nature and extent of his property. Jones v. Denton, 192 Okl. 234, 135 P.2d 53. Furthermore testator's attending physician testified that testator was mentally clear and had capacity to judge, as previously stated. The evidence supporting the finding of testamentary capacity is substantial.

It is contended that In re Owens' Estate, 63 N.M. 263, 316 P.2d 1077, added a fourth controlling element of testamentary capacity—the capacity to dispose of the property according to a plan. Appellant is mistaken as to our holding in that case. All that was said regarding the ability to dispose of testator's property according to a plan was that the trial court had so found. That was not held to be a controlling element of testamentary capacity.

The question as to whether a will was executed under undue influence is always a difficult one. The fact, if it be established, that influence has been exerted upon a testator, does not of itself require that the will be vitiated, set aside, or denied probate. This court in Calloway v. Miller, supra, referred to 57 Am.Jur. "Wills", §§ 350, 351, 352, and 391 for a general statement of the meaning of undue influence. In 1 Bowe-Parker: Page on Wills, § 15.6 at 724, undue influence is defined thus:

"It is not the nature and extent of the influence, but its effect upon the mind of the testator which determines whether it is undue influence * * *. In order to amount to undue influence, the means used must not only influence testator to make the will, but the influence thus exerted must be too powerful for his mind to resist, so that the influence effects the terms of the will."

The following definition was stated in Wiley v. Gordan, 181 Ind. 252, 104 N.E. 500, 505:

"Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made. It must be an influence of such compelling force that the apparent testator is but the instrument by which the mastering desire of another is expressed, so that the supposed will, or the particular part in question, is not the will of the testator, except in the sense that he has consented to put his name to it in the form in which it appears."

See also Ludwick v. Banet, 125 Ind.App. 465, 124 N.E.2d 214.

Finally appellant says that the age and physical condition of the testator; the opportunity of proponent to influence him; that he made a will in 1955 leaving his property to his sister; the close relationship between testator and his sister and her financial assistance to him, coupled with the statement of the doctor that anyone of his age and physical condition could be influenced, create a presumption of undue influence.

Any presumption arising therefrom, however, is an inference or presumption of fact not a presumption of law. If the testator had testamentary capacity he could dispose of his property as he saw fit.

He could disinherit his sister if he chose. There must be more than mere suspicion of undue influence to vitiate a will or to deny it probate. To deny a will probate because of undue influence, there must be such influence exercised at the time the will is made, as to destroy the will of the testator and cause him to do what he would not have done of his own free choice. In re Bryan's Estate, 82 Utah 390, 25 P.2d 602.

The evidence is uncontradicted that the attorney who drew the will had conferences with the testator, when they were alone. He advised testator of his rights in disposing of his property. Testator directed the exact manner of disposal and the attorney saw no evidence of any undue influence. The property was left to testator's wife. There is also the fact that contestant had caused the bank to stop payment on testator's account, as well as the fact that after his marriage testator seemed happy and more contented.

This court in Calloway v. Miller, supra, cited the decision in In re Mitchell's Estate, 41 Wash.2d 326, 249 P.2d 385, and approved the reasoning of that decision on the question of testamentary capacity and undue influence. The Washington decision discussed the quantum of proof to establish undue influence and held that the court could not set aside the will except upon clear, cogent and convincing proof of such influence. A review of the evidence in this case convinces us that it does not conform to the required degree of proof of undue influence.

We find no error and the judgment will therefore be affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, MOISE and CHAVEZ, JJ., concur.