908 P.2d 751

**In the Matter of the ESTATE OF Frances Chavez KEENEY, deceased.**

No. 15521.

Court of Appeals of New Mexico.

Aug. 22, 1995.

Michael L. Gregory, Las Vegas, for Petitioner–Appellant.

Roberto L. Armijo, Danelle J. Smith, Las Vegas, John S. Catron, Catron, Catron & Sawtell, P.A., Santa Fe, for Respondents–Appellees.

*OPINION*

WECHSLER, Judge.

Bernadette Gurule, Petitioner, appeals from summary judgment in a case involving a will contest over the estate of Frances Chavez Keeney. The issues presented on appeal are: (1) whether certain affidavits submitted by Gurule in connection with the reply to the motion for reconsideration of summary judgment can be considered by this Court; (2) whether there were material facts in dispute which would create a presumption of undue influence over Keeney; and (3) whether, assuming that summary judgment in favor of Baca was improper and that there was no evidence of undue influence by Respondents John and Tina Singletary or by Baca on behalf of the Singletarys, summary judgment could properly be granted in favor of the Singletarys. We reverse as to both Baca and the Singletarys.

*Facts*

Keeney died on February 28, 1993, at the age of seventy-three. She executed her last will and testament on November 29, 1990, devising the bulk of her estate to Baca and the Singletarys, none of whom were related to her. Keeney left nothing to her two surviving relatives, Alfredo Chavez, her brother, and Gurule, her sister's adopted daughter.

In 1990, prior to the execution of the will, Keeney was hospitalized for extensive periods of time and for a wide range of medical problems. During that time, doctors performed several surgical procedures on her, including the amputation of one of her legs below the knee. Following the amputation, Baca, a next-door neighbor of Keeney, and Baca's cousins, the Singletarys, provided Keeney with transportation, home maintenance, meals, some banking chores, and other errands. Baca had a set of keys to Keeney's house so that she could lock the house in the evening and unlock it in the morning. For several years before the amputation, Baca was a signatory on at least one of Keeney's bank accounts.

The above facts appear to be uncontested. The facts that are contested relate to the nature of the relationship between Baca and Keeney. Gurule asserts that Baca enjoyed Keeney's confidence and that Keeney was susceptible to undue influence. She alleges that Keeney was mentally unstable prior to executing the will and, because of that, Keeney isolated herself from her relatives. She claims that Keeney was also under undue influence at the time of the signing of the will to the extent that she could not comprehend what she was doing.

Respondents moved for summary judgment, claiming that there were no genuine issues of material fact on the questions of the validity of the will or of the existence of undue influence. In support of their motion, Respondents filed numerous affidavits by people testifying that Keeney was very intelligent and was mentally alert both before and after the amputation. The witnesses to the execution of the will testified that Keeney was clear of mind when she signed the will. In particular, the attorney who helped Keeney prepare her will testified that Keeney was clear about not wanting to leave anything to her relatives.

The trial court held a hearing on the summary judgment motion on January 21, 1994, at the end of which the court announced that it would grant summary judgment to Respondents. Summary judgment was entered on February 11, 1994. On January 31, 1994, Gurule filed a motion for reconsideration of summary judgment. Respondents responded on February 14, 1994, and appended several affidavits, excerpts from depositions, and other documents to their answer.

Gurule served a reply to the answer on February 18, 1994, and also appended affidavits, excerpts of depositions, and other documents. Among the affidavits is one from William E. Foote, Ph.D., a licensed psychologist, who reviewed Keeney's medical records. Dr. Foote asserted the following: (1) Keeney "experienced a long course of emotional debility and illness prior to the execution of her Will"; (2) she suffered from chronic depression, and it was a high probability that she was addicted to prescribed medication; and (3) "a person with her history of emotional condition, isolation from family, recent death of close relatives, and dependence [on] others for assistance in performing the essential

daily activities would be more highly susceptible to undue influence in planning, preparation and execution of a Will disposing of her property."

On March 22, 1994, the trial court denied the motion for reconsideration. In its order denying the motion, the court acknowledged "having considered the Briefs, argument of counsel and affidavits submitted." In his letter ruling addressed to the parties, the judge stated that he "very carefully reviewed all of the material that was submitted in support of and in opposition to the Petitioner's Motion for Reconsideration" but was "satisfied that [his] initial ruling granting summary judgment ... was appropriate" because "[t]here is no genuine issue of material fact with respect to the existence of a confidential relationship between the decedent and the Respondents."

*Discussion*

I. *Affidavits Submitted in Connection with Motion for Reconsideration of Summary Judgment Can Be Reviewed by This Court*

■ Respondents argue that the affidavits submitted in connection with Gurule's motion for reconsideration are not properly before this Court for purposes of our review of the trial court's grant of summary judgment. They cite *Schmidt v. St. Joseph's Hospital,* 105 N.M. 681, 684–85, 736 P.2d 135, 138–39 (Ct.App.1987), for the proposition that affidavits filed after a summary judgment hearing may not be considered by this Court, even though the trial court had jurisdiction to supplement the record and vacate its grant of summary judgment. Because the trial court in *Schmidt* did not consider the affidavits when making its determination as to summary judgment, this Court could not review them as they were not among the affidavits upon which the trial court's decision was based. *Id.* *Schmidt* did not involve a motion for reconsideration of summary judgment, and there is no indication that the trial court in that case reconsidered its decision. Here, the trial court stated that it "considered" and "carefully reviewed" affidavits submitted by both parties and yet was still convinced that summary judgment was ap-

propriate. We take the court's statement to be an acknowledgement that it reconsidered and reaffirmed its initial grant of summary judgment.

■ As Gurule points out, a trial court has authority to reconsider its judgment, on motion by a party or on its own motion, provided the court does so within thirty days. NMSA 1978, § 39–1–1 (Repl.Pamp.1991); *Desjardin v. Albuquerque Nat'l Bank,* 93 N.M. 89, 90, 596 P.2d 858, 859 (1979). However, the question of whether we may review documents submitted between the time of summary judgment and the time of reconsideration of summary judgment is one that has not previously been decided by our appellate courts.

The United States Court of Appeals for the Fifth Circuit first addressed the issue in *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). In that case, the defendant was granted summary judgment, and the plaintiff filed a motion for reconsideration with additional deposition testimony. The Court noted that the Federal Rules of Civil Procedure do not recognize a motion for reconsideration of summary judgment in such terms. *Id.* at 173. Such a motion is "treated as either a motion 'to alter or amend' [the judgment] under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Id.* Because Rule 59(e) motions must be served within ten days of the entry of judgment, a motion for reconsideration filed within ten days is treated as a Rule 59(e) motion. *Id.* In the present case, Gurule filed her motion ten days after the court announced its intent to grant summary judgment and eleven days before actual entry of judgment. Therefore, for purposes of deciding whether to consider the affidavits in question, we treat the motion for reconsideration as a motion under SCRA 1986, 1–059(E) (Repl.1992), the New Mexico equivalent of Federal Rule 59(e).

■ Although Rule 60(b) motions require specific grounds, Rule 59(e), which is subject to severe time limitations, is not so restricted as to the basis for relief. *Lavespere,* 910 F.2d at 173–74. A trial court has

considerable discretion to reconsider summary judgment under Rule 59(e). *Id.* at 174. There is no abuse of discretion for the trial court to consider new material as part of a motion for reconsideration under Rule 59 as long as the delay in presenting the new material is not just for strategic reasons, and its relevance outweighs any prejudice. *Id.* *Lavespere* was cited for this proposition in *Fields v. City of S. Houston, Texas,* 922 F.2d 1183, 1188 (5th Cir.1991). If the trial court does consider the new material and still grants summary judgment, "the appellate court may review all of the materials *de novo.*" *Id.*

Adoption of this rationale in New Mexico is consistent with recent opinions of this Court which encourage parties to file their reasons for seeking post-judgment relief sooner rather than later, preferably within the ten days set forth in Rule 59, at the risk of waiving post-judgment relief under the more relaxed time considerations of Rule 60(b). *Dozier v. Dozier,* 118 N.M. 69, 878 P.2d 1018 (Ct.App. 1994); *see also Deerman v. Board of County Comm'rs,* 116 N.M. 501, 864 P.2d 317 (Ct. App.), *cert. denied,* 116 N.M. 364, 862 P.2d 1223 (1993). That is what Gurule did here.

In the present case, the reason for the untimely filing appears to be negligence and not a strategy decision. The Foote affidavit is highly relevant to the question of the appropriateness of summary judgment, and other materials submitted after the summary judgment hearing are relevant as well. Furthermore, Respondents failed to preserve for appeal a challenge to the affidavit because they failed to move to strike below. *Chavez v. Ronquillo,* 94 N.M. 442, 445, 612 P.2d 234, 237 (Ct.App.1980). They also had submitted their own affidavits to which the Foote and other affidavits were responsive. We find no abuse of discretion in the trial court's consideration of the affidavits, and we may, therefore, consider the affidavits de novo in determining whether summary judgment was properly granted by the trial court.

II. *Summary Judgment in Favor of Baca Was Improper*

■ In addition to Respondents' argument that this Court cannot consider the Foote affidavit because it was submitted after the summary judgment hearing, Respondents contend that the affidavit does not comply with SCRA 1986, 1–056(E) (Repl.1992), because it was not based on Foote's personal knowledge. However, the affidavit represents opinion testimony of an expert, which testimony would be admissible at trial. Therefore, it is proper for summary judgment consideration. 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.22[1], at 56–752 to –755 (2d ed. 1988).

■ Respondents argue that, even if we consider the Foote affidavit in reviewing this case, the evidence presented by Gurule was insufficient to raise a presumption of undue influence. We disagree. "Generally, because of the difficulty in obtaining direct proof in cases where undue influence is alleged, proof sufficient to raise the presumption is inferred from the circumstances." *Montoya v. Torres,* 113 N.M. 105, 110, 823 P.2d 905, 910 (1991); *see also In re Will of Ferrill,* 97 N.M. 383, 387, 640 P.2d 489, 493 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). "A presumption of undue influence arises if there is shown to be a confidential or fiduciary relation between the primary beneficiary and the testator and if suspicious circumstances are also shown." *Id.; Doughty v. Morris,* 117 N.M. 284, 288, 871 P.2d 380, 384 (Ct.App.1994); *In re Estate of Gonzales,* 108 N.M. 583, 585, 775 P.2d 1300, 1302 (Ct.App.1988), *cert. quashed,* 108 N.M. 197, 769 P.2d 731 (1989). A confidential or fiduciary relationship exists when one person places trust and confidence in the integrity and fidelity of another. *Id.*

■ With respect to the confidential or fiduciary relationship, there is evidence that Baca was a signatory on a bank account belonging to Keeney exceeding $10,000, that she was named on another account and a certificate of deposit, each with more than $6000 deposited, that she had keys to Keeney's house to unlock and lock the doors, and that she regularly ran errands for Keeney. Keeney's reliance on Baca in these financial and personal matters indicates a degree of trust which may give rise to a confidential relationship. *See In re Strozzi,* 120 N.M. 541, 544–545, 903 P.2d 852, 855–56 (Ct.App.

August 21, 1995) (control of decedent's checking account and continual presence in all aspects of decedent's life justifying jury finding of confidential relationship).

■ As to suspicious circumstances, there is evidence that Keeney, an elderly woman, had experienced a long course of emotional instability and illness prior to her execution of the will; had her leg amputated shortly before the execution of the will; and had suffered from medical problems, including chronic obstructive pulmonary disease, congestive heart failure, impaired circulation to the lower extremities, abdominal problems, chronic depression, and probably an addiction to opiate analgesic medication. However, a will contestant must show more than old age and poor health to create a presumption of undue influence. *Lucero v. Lucero*, 118 N.M. 636, 641–42, 884 P.2d 527, 532–33 (Ct.App.1994); *Doughty*, 117 N.M. at 289, 871 P.2d at 385. Such a presumption "ordinarily is based on evidence of mental weakness or susceptibility to influence." *Montoya*, 113 N.M. at 108, 823 P.2d at 908 (quoting *In re Estate of Gonzales*, 108 N.M. at 586, 775 P.2d at 1303).

Dr. Foote's affidavit provides linkage between Keeney's poor health·and her susceptibility to influence. After reviewing Keeney's medical records, Dr. Foote opined that Keeney was "more highly susceptible to undue influence in planning, preparation and execution of a [w]ill disposing of her property." *See In re Will of Ferrill*, 97 N.M. at 388, 640 P.2d at 494 (psychiatrist opinion that the decedent "would have been susceptible to undue influence at the time the will was signed due to her physical and medical condition" was "suspicious circumstance"). Such linkage was not present in *Lucero*, 118 N.M. at 641, 884 P.2d at 532 (no showing that the decedent's "old age or poor health affected her mental ability ... to make her susceptible to undue influence") or *In re Estate of Gonzales*, 108 N.M. at 585, 775 P.2d at 1302 (suspicious circumstances without a showing of effect on mental ability insufficient to create a presumption of undue influence).

There is further evidence that Keeney was isolated from her family and was dependent upon Respondents for meeting her daily needs. Affidavit testimony also reveals that Keeney denied having any living family members when she had a brother living in Colorado and a niece, Gurule, in California. All of this evidence, when considered in its entirety and in the light most favorable to uphold a right to a trial on the merits, *DeLisle v. Avallone*, 117 N.M. 602, 607, 874 P.2d 1266, 1271 (Ct.App.), *cert. denied*, 117 N.M. 773, 877 P.2d 579 (1994), is sufficient to present a reasonable inference that Keeney had a confidential relationship with Baca and was susceptible to undue influence due to her weakened physical and mental condition. As a result, there is a genuine issue of material fact that precludes, as a matter of law, a determination of summary judgment in favor of Baca.

### III. Summary Judgment in Favor of the Singletarys Was Improper

■ Although there is evidence of a relationship between Tina Singletary and Keeney which consisted, in part, of Singletary preparing meals, running errands, and cashing two $250 checks that Keeney had endorsed, these facts are not as compelling as those concerning the relationship between Baca and Keeney that give rise to the presumption of a confidential relationship. However, we do not address the question of whether there was a confidential relationship between Keeney and the Singletarys. The entire will could be invalid even without such a confidential relationship. First, if there was undue influence by Baca, she may have acted on behalf of the Singletarys as well as herself, in which case the Singletarys would also be precluded from taking property under the will. *See Montoya*, 113 N.M. at 109–10, 823 P.2d at 909–10 (when undue influence is used to procure gift, the gift is invalid even if donee did not participate in the procurement).

Second, the entire will could be invalidated if it cannot be determined that only part of the will was the result of undue influence. In *Hummer v. Betenbough*, 75 N.M. 274, 404 P.2d 110 (1965), the decedent made specific bequests of real property to persons including her sister, and she devised the residue of her estate to her brothers. *Id.* at 276–77,

404 P.2d at 112. After determining that the brothers had exercised undue influence upon the decedent, *id.* at 285, 404 P.2d at 118, the Supreme Court addressed the question of whether the bequest to the sister should be fulfilled. Quoting from *Page on the Law of Wills,* the Court stated in part:

> "If a part of the will is caused by undue influence, and such undue influence does not affect the remaining provisions of the will, the validity of the provisions which are not caused by such undue influence depends, in part, on whether it is possible to ascertain which portions are caused by the undue influence, and whether such portions, if ascertained, can be held to be invalid without destroying the intention of the testator. If it is not practicable to ascertain what portions of the will were caused by undue influence and what were free from it, ... the entire will is invalid."

*Hummer,* 75 N.M. at 287, 404 P.2d at 119 (quoting 1 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 15.12, at 741 (Rev.1960)). Because there was no evidence concerning the reasons for the bequest to the sister, the Court invalidated the entire will. *Hummer,* 75 N.M. at 287–88, 404 P.2d at 120.

If the trier of fact finds that there was undue influence, it would need to determine, using the principles set forth in *Hummer,* whether the entire will is invalid. As the parties did not focus upon whether any undue influence on the part of Baca may have tainted the provisions in the will that apply to the Singletarys, we do not have a sufficient record to make any determination. For that reason, summary judgment in favor of the Singletarys was improper.

*Conclusion*

We hereby reverse the trial court's grant of summary judgment and remand for a trial on the merits.

**IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.