This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41204**

**KENNETH STOCKTON, individually
and as next friend of BARBARA
STOCKTON, an incapacitated person,**

     Plaintiff-Appellee,

v.

**C.E. "BUDDY" STOCKTON, JERRELL
A. SHELLEY and CHARLENE SHELLEY,**

     Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY
Jennifer E. DeLaney, District Court Judge**

Benting Crumley Law, LLC
Tyler W. Benting
Deming, NM

for Appellee

Lopez, Dietzel, & Perkins, P.C.
William Perkins
Silver City, NM

for Appellants

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendants C.E. "Buddy" Stockton, Charlene Shelley (Buddy's daughter), and Jerrell A. Shelley (Buddy's grandson and Charlene's son) (collectively, Defendants) appeal the district court's judgment voiding Buddy's conveyance to Jerrell of all assets of the Stockton Family Trust (the Trust), a trust created by Buddy and his wife Barbara

Stockton, which named Buddy and Barbara as the original Trust beneficiaries during their lifetimes, as well as the conveyance to Jerrell of all of Buddy and Barbara's community assets not held in the Trust. Buddy's transfer of all of his and Barbara's assets to Jerrell, without consideration, left Barbara, who was incompetent and needed nursing care, destitute. Plaintiff Kenneth Stockton (Buddy and Barbara's son) brought this suit against Defendants both as "next friend" to Barbara, and in his individual capacity as a residuary beneficiary of the Trust, alleging breach of fiduciary duty by Buddy and Charlene, undue influence by Charlene and Jerrell, and unjust enrichment of Jerrell. We affirm the district court's order restoring all of the assets not used by Jerrell for Barbara's care to the Trust or to Buddy and Barbara as community property.

**DISCUSSION**

**{2}** Defendants raise five points of error. First, Defendants challenge Kenneth's standing to sue either in his individual capacity or as "next friend" to Barbara. Second, Defendants claim that the district court's decision that Buddy breached his fiduciary duty as trustee of the Trust to Barbara, his cobeneficiary, by conveying all of the Trust's assets without her consent, is not supported by sufficient evidence. Third, Defendants claim that the district court erred in restoring Barbara as the beneficiary of Buddy's life insurance policy without finding that the gift to Jerrell of the life insurance policy was a "gift of substantial community property." Fourth, Defendants claim the district court was required to adopt the opinion of Defendant's expert witness that Buddy understood and intended to transfer all of his and Barbara's assets to Jerrell, and that there was no evidence that Buddy had been unduly influenced. And fifth, Defendants argue the district court erred in finding that Jerrell was unjustly enriched by the gift of more than $1.5 million in assets. We discuss these issues in turn.

**I.      Standing**

**{3}** Defendants argue that Kenneth lacks standing to bring suit either as "next friend" to his mother, Barbara, pursuant to Rule 1-017(D) NMRA, or in his individual capacity as a residual beneficiary of the Trust.

**{4}** "The determination of whether a party has standing to sue is a question of law, which we review de novo." *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803. Unlike federal courts, where standing is derived from Article III of the United States Constitution, "standing in our courts is not derived from the state constitution, and is not jurisdictional." *Am. Civ. Liberties Union of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9, 144 N.M. 471, 188 P.3d 1222.

**{5}** We first address Kenneth's standing to represent his mother's interests as her "next friend" under Rule 1-017(D). In New Mexico, Rule 1-017(D) governs the district court's authority to appoint a next friend to sue on behalf of an incompetent person. Rule 1-017(D) states, in relevant part, as follows:

Infants or incompetent persons. When an infant or incompetent person has a representative, such as a general guardian, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make any other order as it deems proper for the protection of the infant or incompetent person.

{6}     Defendants do not dispute the district court's finding that Barbara was, at all times material to this case, incompetent and lacking in capacity to sue or be sued. As provided by Rule 1-017(D), the district court first considered whether Barbara had a representative, such as a general guardian or other fiduciary who could sue on her behalf. Finding that Barbara did not have a general guardian, the district court turned to others who stood in a fiduciary relationship to Barbara. The court turned first to Barbara's husband, Buddy, noting that he was a defendant in this action based on allegations that he had failed to represent Barbara's interests. The court looked next to Barbara's daughter Charlene, who held a power of attorney for her mother, noting that Charlene was also a defendant in this action and had allegedly overseen the conveyance of Barbara's interests to Charlene's son Jerrell, a breach of her fiduciary duty to Barbara. The district court found that both Buddy and Charlene had a conflict of interest and that both had failed to protect Barbara's interests. Having ruled out Buddy and Charlene as appropriate persons to represent Barbara's interests before the district court, the court decided that Barbara's son, Kenneth, who was named by Barbara in a health care power of attorney, had no conflict of interest and, therefore, could fairly represent Barbara's interests before the district court as her next friend.

{7}     We do not agree with Defendants that the district court abused its discretion in holding that both Buddy and Charlene have a direct conflict of interest, and that Kenneth's residual interest in the Trust, in contrast, did not conflict with Barbara's interests. We agree that Kenneth was a better choice to pursue this lawsuit as Barbara's next friend. Rule 1-017(D) allows the district court to "make any . . . order as it deems proper for the protection of the . . . incompetent person." Appointing Kenneth, rather than Buddy or Charlene, who had interests in direct conflict with Barbara's interests in this case, was a proper exercise of the district court's discretion to protect an incompetent person appearing before the court.

{8}     We do not address Kenneth's individual standing on his own behalf as the residual beneficiary of the Trust. Our review shows that every issue raised in this case directly involved Barbara's interests, and, Kenneth, therefore, had standing as Barbara's representative.

II.     **The Trust Terms Did Not Authorize Buddy to Convey the Trust Assets to a Third Person Without Consideration and Without Barbara's Consent**

**{9}** Next, Defendants challenge the district court's conclusion that Buddy breached the fiduciary duty imposed on a trustee by the Uniform Trust Code, NMSA 1978, §§ 46A-1-101 through -11-1105 (2003, as amended through 2018), to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries," § 46A-8-801, and "solely in the interests of the beneficiaries," § 46A-8-802(A).

**{10}** Defendants rely on Section 46A-1-105(B), which provides that the terms of a trust prevail over the provisions of the Uniform Trust Code, with limited exceptions, and Section 46A-8-802(B)(1), which allows self-dealing by a trustee if "the transaction was authorized by the terms of the trust." Defendants claim that the district court failed to consider two provisions in the Trust, which they argue supersede the provisions of the Uniform Trust Code and authorize Buddy to dispose of Trust assets without Barbara's consent.

**{11}** Defendants claim that Section 4(A) of the Trust authorized Buddy to withdraw his share of the property in the Trust, and dispose of that property as he chose, without Barbara's consent. Defendants are mistaken. To the extent Section 4(A) might be read to permit this, Section 4(B) of the Trust explains that the authority of one of the grantors to unilaterally withdraw property from the Trust under Section 4(A) and dispose of it is limited to his or her separate property and only after notice is provided to the other grantor of such withdrawal. Accordingly, to the extent Buddy had authority under Section 4(A) and (B) of the Trust to withdraw the property from the Trust, such authority was expressly limited "to his . . . separate property that was contributed to the Trust." Here, Buddy did not withdraw separate property he contributed to the Trust, instead he withdrew his and Barbara's community property. Thus, this withdrawal is in contravention to the terms of the Trust.

**{12}** If the property withdrawn is community property, as it was here, the trustee is required to restore any property withdrawn from the Trust to the grantors in the form that property was held when it was put into the Trust. In other words, if the asset was originally community property, as the ranch and all other property in the Trust originally were, it "shall be returned to the Grantors as the Grantors' community property." Once returned to the Grantors as community property, each Grantor's right to dispose of the property is governed by New Mexico's community property law. That law provides that both "spouses must join in all transfers, conveyances or mortgages . . . [of] any interest in community real property . . . owned by the spouses." NMSA 1978, § 40-3-13(A) (1993).

**{13}** Consistent with Section 4(B) of the Trust, the district court found that even if title to the couple's ranch and other real property was legitimately removed from the Trust by Buddy under the terms of Section 4(A), it was returned to the community upon its removal, and Buddy could not dispose of that community real property without

Barbara's consent.[1] *See id.* (providing that the transfer of real property requires the consent of *both* spouses).

**{14}** We turn next to Section 4(D) of the Trust—a provision allowing one of the grantors to make a gift from the assets of the Trust estate without the consent of the cograntor. Defendants claim that Buddy was entitled to rely on this provision to authorize his gift of all of the assets of the Trust to a third party without Barbara's consent.

**{15}** The district court concluded that Buddy did not make a gift to Jerrell, and that, therefore, this provision was not invoked. The district court's findings of fact establish the absence of many of the elements necessary for a donor to make a valid gift. *See Espinosa v. Petritis*, 1962-NMSC-101, ¶ 7, 70 N.M. 327, 373 P.2d 820 (listing the elements of a valid gift). The district court found that Buddy did not have donative intent, one of the required elements for a valid gift. *See id.* Buddy conveyed the property subject to a condition, which he believed required Jerrell to care for both him and Barbara until their death, along with a lease of the ranch back to him during his lifetime. Defendants argued before the district court and again on appeal that Buddy believed he had received and that he had in fact received adequate consideration for the ranch. Buddy, therefore, by Defendant's admission, did not have donative intent, a necessary element for a valid gift.

**{16}** A gift must also be made freely, without undue influence or fraud. *See id.*; *Montoya v. Torres*, 1991-NMCA-152, ¶ 15, 113 N.M. 105, 823 P.2d 905 ("The law will not permit improper influences to control the disposition of a person's property." (internal quotation marks and citation omitted)). The district court's finding that Buddy was subjected to undue influence when he decided to transfer the Trust assets to Jerrell, a finding we discuss below, therefore, also defeats Defendants' argument that Buddy made a gift to Jerrell.

**{17}** Because neither provision of the Trust relied on by Defendants relieved Buddy of his fiduciary duty to manage the Trust impartially and prudently to benefit the interests of both of the beneficiaries, we agree with the district court that Buddy's conveyance of all of the Trust assets to Jerrell was not a gift and violated Buddy's fiduciary duty to Barbara, his cobeneficiary.

### III. The Conveyance of the Couple's Community Assets to Jerrell, Without Consideration, Was a Breach of the Fiduciary Duty Owed by One Spouse to the Other

---

[1]The district court found that Barbara did not consent to either the transfer of assets from the Trust or the transfer of any community assets to Jerrell. Although Defendants contend that she did consent, they fail to argue and to establish that the district court's finding that Barbara was incompetent and unable to consent was not supported by substantial evidence in the record. We, therefore, do not consider this argument further.

**{18}** Defendants next argue that Buddy did not violate New Mexico community property law when he transferred all of the couple's community personal property to Jerrell without consideration.

**{19}** The district court applied our Supreme Court's decision in *Roselli v. Rio Cmtys. Serv. Station, Inc.*, 1990-NMSC-018, ¶ 23, 109 N.M. 509, 787 P.2d 428, to determine the duty owed by one spouse to the other spouse when gifting community property. Unlike real property, either spouse has "full power to manage, control, dispose of and encumber the entire community personal property." NMSA 1978, 40-3-14(A) (1975). *Roselli* holds that this authority is "subject to a fiduciary duty to the other spouse," and that "absent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse." 1990-NMSC-018, ¶ 23.

**{20}** Defendants' argument focuses solely on Buddy's removal of Barbara as a beneficiary of his life insurance policy in favor of Jerrell. Defendants claim the district court erred in applying *Roselli* to this change of beneficiary because the court failed to make a finding that Buddy's life insurance policy constituted a "gift of substantial community property."

**{21}** Defendants misconstrue the findings of the district court. The district court found that Buddy transferred *all* of the couple's personal community property to Jerrell, leaving Barbara, who was incompetent and needed care in a nursing home, destitute. *All* of the couple's community property, which the court found included household goods, a Dodge truck, a trailer, a stock trailer, a Ford truck, a Datsun truck, a John Deere tractor, a Polaris Ranger, fifty-two cows and heifers, and six bulls, as well as the life insurance policy, by definition constituted a "gift of substantial community property." The court found that the stated assets "comprise all of the property owned by Buddy and Barbara," and that *all* of these assets were given to Jerrell by Buddy. Contrary to Defendant's arguments, the district court was not required to consider each item of community property separately. *See Chavez v. S.E.D. Lab'ys*, 2000-NMSC-034, ¶ 19, 129 N.M. 794, 14 P.3d 532 ("Findings are sufficient if, taken together and construed in support of the judgment, they justify that judgment."); *see also State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (noting that, in a sufficiency of the evidence review, appellate courts do not engage in a divide and conquer analysis, rather an appellate court views the evidence as a whole).

## IV. Buddy Was Unduly Influenced to Transfer All of His and Barbara's Assets to Jerrell

**{22}** The only challenge that Defendants make to the district court's determination that Buddy was unduly influenced by Charlene, his daughter, with the help of Jerrell, is that the district court failed to accept the opinion of Defendants' expert witness that Buddy understood that he was giving his assets to Jerrell, rather than to Kenneth and Charlene, his children, and that there was no sign that he had been subjected to undue influence. It is settled law that a district court, sitting as the trier of fact, is not bound to

accept the testimony of an expert witness. *See State v. Smith*, 1969-NMCA-016, ¶ 17, 80 N.M. 126, 452 P.2d 195. In this case, the district court accepted some, but not all, of the expert's testimony, explaining that the expert focused only on Buddy's understanding and intent as to his children and grandchildren, and did not recognize or discuss Barbara or Barbara's needs with the expert. It was not apparent from the expert's report whether Buddy understood that his wife was still alive and in need of care, or that she, and not his children or grandchildren, was his immediate beneficiary. In any event, the expert failed to consider that Buddy's decision to make this conveyance would leave his wife of over seventy years with nothing to support her care and maintenance. In light of this omission, we see no error in the district court's exercise of its discretion to rely more heavily on the extensive evidence of the existence of every one of the suspicious circumstances associated with undue influence, as stated in *Montoya v. Torres*, 1991-NMCA-152, ¶ 19, 113 N.M. 105, 823 P.2d 905. Defendants' argument ignores this extensive evidence supporting the district court's decision, presenting only the evidence Defendants claim supports their viewpoint. This argument is contrary to and disregards the maxim that the question for this Court is "not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *See Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

## V. The District Court Did Not Err in Concluding That Jerrell Was Unjustly Enriched

**{23}** Defendants' final allegation of error addresses the district court's conclusion that Jerrell was unjustly enriched. We see no error in the district court's conclusion.

**{24}** To prevail on a claim for unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. AMREP Sw. Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414 (internal quotation marks and citation omitted). Here, the district court concluded that Jerrell was unjustly enriched because Jerrell provided no consideration for the receipt of all of Buddy and Barbara's community property, valued at well over a million dollars, leaving Barbara, the rightful co-owner of the property along with Buddy, destitute. We are not persuaded by Defendants' claim that the lease Jerrell gave to Buddy to allow him to continue to live on property that Buddy should have owned constituted consideration, particularly where the facts show that Buddy did not live on the allegedly leased property, and instead Jerrell allowed one of Jerrell's stepsons to live there. The district court found as well that to the extent Jerrell promised to take care of his grandparents, it "was illusory and not consideration," pointing to the unenforceability of this promise. The district court found that Barbara had been forced to move to a less expensive facility because of the transfer of the property, despite Jerrell's promise to take care of her. We see no error in the district court's conclusion that the transfer of more than $1.5 million in property to Jerrell benefitted him at both Buddy and Barbara's expense, that the transfer occurred

as a result of Jerrell participating in a scheme to unduly influence Buddy, and that therefore a return of the property to its rightful owners was demanded "in the interest of equity."

**CONCLUSION**

**{25}** For these reasons, we affirm the district court's judgment and order.

**{26}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**GERALD E. BACA, Judge**